## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) |  |
| **MAGIC BRANDS, LLC,** *et al,* [1] | ) | **Case No. 10-11310 (BLS)** |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) | **Jointly Administered** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (V) SCHEDULING A FINAL HEARING ON THE DEBTORS' MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS

This matter is before the Court on the motion filed by Magic Brands, LLC and the other debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Cases") dated April 21, 2010 (the "Motion") requesting entry of an interim order (the "Order"):[2]

      (1)     authorizing and approving, pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for King Cannon, Inc., a Delaware corporation, KCI, LLC, a Delaware limited liability company, Fuddruckers, Inc., a Texas corporation, Atlantic Restaurant Ventures, Inc., a Virginia corporation and Magic Brands,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Magic Brands, LLC ("Magic") (8989), Fuddruckers, Inc ("Fuddruckers") (8267), Atlantic Restaurant Ventures, Inc ("Atlantic") (9769), King Cannon, Inc ("King Cannon") (8671), and KCI, LLC ("KCI") (9281) The address for all of the Debtors is 5700 Mopac Expressway, Suite C300, Austin, Texas 78749.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Agreement (defined below).

LLC, a Delaware limited liability company to obtain postpetition financing up to the principal amount of $13,780,500 (the "DIP Facility") from Wells Fargo Capital Finance, Inc., a California corporation f/k/a Wells Fargo Foothill, Inc. ("WFCF"), as arranger, administrative agent and a lender (the "DIP Agent"), and the other lenders from time to time parties to the DIP Facility Agreement (as defined below) (collectively, in their lender capacity, the "DIP Lenders"), to (A) fund, among other things, ongoing working capital, general corporate, letters of credit and other financing needs of the Debtors, (B) pay down the Prepetition Revolver Advances (as defined below), which amounts are stipulated to be secured by the Prepetition Collateral (as defined below), (C) provide the Prepetition Secured Parties Adequate Protection (each as defined below), (D) pay certain transaction fees, and other costs and expenses of administration of the Cases, and (E) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Agent and the DIP Lenders under the DIP Facility Documents (obligations under the DIP Facility and under this Order, including, without limitation, principal, accrued interest, unpaid fees and expenses, and all other obligations and amounts due from time to time under the DIP Facility Documents (as defined below) shall be referred to hereinafter collectively as the "Postpetition Indebtedness");

(2)     authorizing and empowering the Debtors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     providing, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the obligations under the DIP Facility:

    a.     have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or

claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Cases or any successor case, which allowed superpriority claims of the DIP Agent and DIP Lenders shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors, except for the Carve-Out (as defined below) (the "DIP Facility Superpriority Claims"); and

b.    be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests and liens (the "DIP Facility Liens") in and on all prepetition and postpetition property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "Collateral"), subject only to the Carve-Out, the Permitted Prior Liens, and the Offset Rights (as defined below), and, until the Pay Down (as defined below), the Prepetition Liens; provided, however, that the Collateral shall not include avoidance actions and the proceeds thereof pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code (the "Avoidance Actions") and the Collateral shall include only proceeds of leasehold interests but not the leases themselves;

(4)    authorizing the Debtors pursuant to sections 361, 363(c) and (e), and 364(d)(1) of the Bankruptcy Code to use Cash Collateral (as defined under section 363 of the Bankruptcy Code) and provide Adequate Protection to the Prepetition Secured Parties on account of their claims under the Prepetition Loan Documents (as defined below) for any diminution to the Prepetition Collateral (as defined below) caused by the use of Cash Collateral and the terms of the financing being granted herein;

(5)    scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") before this Court to consider entry of an order approving the DIP Facility, authorizing

the use of Cash Collateral, and authorizing the grant of Adequate Protection to the Prepetition Secured Parties, all on a final basis (the "Final Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the interim hearing on the Motion before this Court to consider entry of this Order (the "Interim Hearing") having been provided by the Debtors as set forth in paragraph H below, and the Interim Hearing having been held on April 23, 2010, and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled; and upon the record made by the Debtors at the Interim Hearing and the Declaration of Gregor Grant in Support of First Day Applications and Motions, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.   On April 21, 2010 (the "Petition Date"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.   Pursuant to an order of this Court, the Cases have been consolidated for procedural purposes only and are being jointly administered. No request for the appointment of a trustee or examiner has been made in these Cases. No committees have been appointed or designated.

C.   This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     Subject to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Debtors acknowledge, agree and stipulate that:

(i)     Pursuant to that certain Credit Agreement, dated as of December 1, 2006, among King Cannon, Inc., KCI, LLC, Fuddruckers, Inc., and Magic Brands, LLC, as borrowers, the guarantors party thereto, WFCF, as arranger and administrative agent (the "Prepetition Agent"), and the lenders (each, a "Prepetition Lender" and collectively, the "Prepetition Secured Parties") party thereto (as amended, supplemented, or otherwise modified as of the Petition Date, the "Prepetition Credit Agreement"; and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Loan Documents"), the Prepetition Secured Parties made loans, issued letters of credit and provided other financial accommodations to or for the benefit of the Debtors;

(ii)     Pursuant to the Prepetition Loan Documents, the Debtors were, as of the Petition Date, jointly and severally, indebted to the Prepetition Agent and the Prepetition Secured Parties in the approximate amount of:

1.     $9,749,534.21 with respect to "Advances" (as defined in the Prepetition Credit Agreement)("Prepetition Revolver Advances"), plus accrued and unpaid interest thereon plus accrued and unpaid fees, costs and expenses due and owing thereunder (exclusive of obligations with respect to issued and outstanding letters of credit (the "Existing Letters of Credit"));

2.     $13,333,333.30 with respect to the Term Loan (as defined in the Prepetition Credit Agreement), plus accrued and unpaid

interest thereon plus accrued and unpaid fees, costs and expenses due and owing thereunder; and

3.     $30,920.00 with respect to the Existing Letters of Credit.

For purposes of this Order, the term "Prepetition Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Loan Documents (including, without limitation, all "Obligations" as defined in the Prepetition Credit Agreement), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Prepetition Loan Documents), and any and all obligations and liabilities, contingent or otherwise, owed with respect to the Existing Letters of Credit or other obligations outstanding thereunder;

(iii)     Pursuant to the Prepetition Loan Documents, the Debtors granted to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, liens and security interests (the "Prepetition Liens") on and in substantially all of the Debtors' property and assets whether real or personal, tangible or intangible, and wherever located, and whether now or hereafter existing or acquired, and all the proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral") to secure the Prepetition Indebtedness and guaranties thereof;

(iv)     As of the Petition Date and immediately prior to giving effect to this Order, (a) the Prepetition Loan Documents are valid and binding agreements and obligations of the Debtors, (b) the Prepetition Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, subject only to the and the liens permitted under the Prepetition Credit Agreement, but only to the extent such

permitted liens are (x) valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), (y) not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (z) senior in priority to the Prepetition Liens under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, the "Permitted Prior Liens"), and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, and the Prepetition Indebtedness, and any amounts paid at any time to the Prepetition Agent or any Prepetition Lender on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (d) no claims exist against any Prepetition Secured Parties under any contract or tort (including, without limitation, lender liability) theories of recovery or pursuant to section 105 or chapter 5 (including, without limitation, sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code; and

(v)     Without impairing the rights of any non-debtor party-in-interest as provided in paragraph 6 herein, the Debtors have waived, discharged and released any right they may have to challenge any of the Prepetition Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Agent, the

Prepetition Secured Parties and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees.

E. The Debtors' businesses have an immediate need for financing under the DIP Facility and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Cases. Without such credit and use of Cash Collateral, the Debtors would not be able to operate their businesses and the Debtors' estates would be irreparably harmed.

F. The Debtors are unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement (as defined below), the "DIP Facility Documents"). The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without providing (a) the DIP Agent, for the benefit of the DIP Lenders, the DIP Facility Superpriority Claims and the DIP Facility Liens as provided herein and in the documents and instruments delivered pursuant to or in connection with the DIP Facility Agreement, and (b) the Prepetition Secured Parties Adequate Protection of their interests in the Prepetition Collateral on the terms and conditions as set forth herein.

G. Pending entry of the Final Order, the DIP Agent, DIP Lenders and Prepetition Secured Parties are willing to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors subject to (i) the entry of this Order, (ii) the terms and conditions of the DIP Facility Documents, and (iii) findings by the Court that such interim postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such interim financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Facility Liens, DIP Facility Superpriority Claims, and the other protections granted pursuant to this Order and the DIP Facility Documents with respect to such interim financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code. Without limiting the foregoing, any advances made to the Debtors under the DIP Facility Documents prior to entry of the Final Order shall be entitled to the protections provided by section 364(e) of the Bankruptcy Code. The DIP Agent, DIP Lenders and Prepetition Secured Parties have each acted in good faith in, as applicable, negotiating, consenting to and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral on an interim basis as contemplated by this Order and the other DIP Facility Documents, and the reliance by the DIP Agent, DIP Lenders and Prepetition Secured Parties on the assurances referred to above is in good faith.

H. Telephonic, facsimile notice or overnight mail notice of the Interim Hearing and the proposed entry of this Order has been provided to (a) the thirty (30) largest creditors listed in the Debtors' consolidated list of creditors (excluding insiders), (b) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (c) counsel to the DIP Agent, (d) all known parties asserting a lien against the Collateral, and (e) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive

notice under the Bankruptcy Rules (collectively, the "Notice Parties"). Under all the exigent circumstances, the requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Order.

I. The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.

J. The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, and use of Cash Collateral are in the best interests of the Debtors and their respective creditors and estates. The interim financing and use of Cash Collateral authorized hereunder is vital to avoid immediate irreparable harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

K. Based upon the record presented by the Debtors to this Court: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtors, DIP Agent, DIP Lenders and Prepetition Secured Parties, and any loans, credit, letters of credit, credit support, use of Cash Collateral or other financial accommodations set forth in this Order shall be deemed to have been extended, issued, made, or

consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

      L.    The consent of the Prepetition Secured Parties granted herein is expressly limited to (i) the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Order and (ii) the postpetition financing being provided by the DIP Agent and DIP Lenders as contemplated by this Order and the DIP Facility Documents. Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

      IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

      1.    <u>Disposition</u>. The Motion is granted as set forth in this Order. Any objections that have not previously been withdrawn are hereby overruled. This Order shall immediately become effective upon its entry.

      2.    <u>Authorization to Borrow Under the DIP Facility</u>. Upon execution and delivery of that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement by and among the Debtors, the guarantors party thereto (the "<u>Guarantors</u>"), the DIP Agent, and the DIP Lenders, in substantially the form annexed to the Motion (the "<u>DIP Facility Agreement</u>"), and provided that the Debtors are not in default under the terms of this Order, the Debtors are authorized to borrow under the DIP Facility from the DIP Lenders up to $13,780,500 (the "<u>DIP Facility Amount</u>"), inclusive of the Existing Letters of Credit, which shall be deemed to have been issued under the DIP Facility (together with interest, fees, charges and expenses payable under the DIP Facility Documents) pursuant to the terms and conditions of the DIP Facility Agreement and in conformity with the amounts set forth in the 13-Week Budget (subject

to permitted variances as set forth in section 6.19 of the DIP Facility Agreement), and to use amounts borrowed under the DIP Facility to fund the Pay Down (as defined below) and to fund the Debtors' working capital and other general corporate needs pending the Final Hearing in accordance with the terms of the DIP Facility Agreement and this Order; provided, however, that amounts actually advanced by the DIP Lenders shall not exceed $4 million plus the amount of Collections applied to the Prepetition Revolver Advances prior to entry of the Final Order. Upon their execution and delivery, the DIP Facility Documents shall constitute legal, valid, and binding obligations of the Debtors, enforceable against the Debtors in accordance with their terms. To the extent that relief is approved at the Final Hearing and subject to the terms and conditions of the DIP Facility Agreement, the Debtors may be entitled to borrow all amounts available under the DIP Facility Agreement to fund the Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Facility Documents, this Order and any other orders of this Court.

3. DIP Facility Superpriority Claims For the Postpetition Indebtedness and any other of the Debtors' obligations arising under the DIP Facility Documents, the DIP Lenders and DIP Agent are each granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out and the Offset Rights (as defined below), the allowed DIP Facility Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired. The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance other than as provided herein, for all purposes in the Cases and any successor case.

4. DIP Facility Liens. As security for the repayment of the Postpetition Indebtedness arising under the DIP Facility Documents, pursuant to sections 364(c)(2), (c)(3)

and (d) of the Bankruptcy Code, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, control agreements, financing statements, or otherwise) the DIP Facility Liens. The DIP Facility Liens are valid, binding, enforceable and fully perfected as of the date hereof, shall prime and be senior in all respects to the Prepetition Liens and the Replacement Liens (as defined below) pursuant to section 364(d) of the Bankruptcy Code, and are subject only to the Carve-Out, the Permitted Prior Liens, the Offset Rights and, until the Pay Down, the Prepetition Liens. Immediately upon the Pay Down, all possessory collateral held by the Prepetition Agent shall be subject to the DIP Facility Liens and disbursed in accordance with the terms of this Order.

        5.    Carve-Out.

        (a)    As used in this Order, the term "Carve-Out" means, to the extent there are no unencumbered funds available to the Debtors' estates, proceeds from Collateral up to pay the following expenses: (i) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6); (ii) subject to the terms and conditions of this Order, the allowed and unpaid reasonable fees and expenses of attorneys and financial advisors (other than FocalPoint) employed pursuant to sections 327 and 1103 of the Bankruptcy Code (collectively, the "Professional Fees") by the Debtors or any official committee of unsecured creditors (if appointed, the "Committee") up to a maximum aggregate amount of $550,000, and (iii) $700,000 on account of the transaction fee as set forth in that certain engagement letter of FocalPoint Partners LLC ("FocalPoint") dated as of February 3, 2010 (items (i), (ii), and (iii), collectively, the "Maximum Carve-Out Amount"). Prior to the commencement of the Remedies Notice Period (as defined herein), the Debtors shall be permitted to pay any allowed Professional Fees actually incurred up to the amounts set forth in the 13-Week Budget and reflected in the

most recent Borrowing Base Certificate delivered to the DIP Agent prior to the commencement of the Remedies Notice Period and such amounts actually paid shall not reduce the Maximum Carve-Out Amount.

(b)     Without limiting the DIP Agent's and DIP Lenders' rights under the DIP Facility Agreement and this Order, at the DIP Agent's and DIP Lenders' discretion, upon payment in full (as set forth in section 2.4(b) of the DIP Facility Agreement) of the Prepetition Indebtedness and the Postpetition Indebtedness, an amount equal to the maximum amount of the Carve-Out at such time may be placed into an account (the "Carve-Out Escrow Account") in full and complete satisfaction of the DIP Agent's, the DIP Lenders' and the Prepetition Secured Parties' obligations in respect of the Carve-Out. The Carve-Out Escrow Account shall not be subject to the Prepetition Liens or the DIP Facility Liens. Any obligation of the DIP Lenders to fund or otherwise pay any amounts toward the Carve-Out shall be added to and made a part of the Postpetition Indebtedness and secured by the Collateral, so long as such aggregate amount does not exceed the DIP Facility Amount, and each DIP Lender shall be entitled to all of the rights, claims, liens, priorities and protections under this Order, the DIP Facility Agreement, the Bankruptcy Code, and/or applicable law in connection therewith.

(c)     Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, Cash Collateral, amounts borrowed under the DIP Facility Documents, proceeds of any of the foregoing, or any portion of the Carve-Out shall include, apply to, or be available for, any fees or expenses incurred by any party, including the Debtors or the Committee (if appointed), in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the DIP Agent or any of the DIP Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset

to, the Postpetition Indebtedness, the DIP Facility Superpriority Claims, or the DIP Facility Liens, (ii) asserting (A) any claims or causes of action, including, without limitation, claims or actions to hinder or delay the assertion or enforcement of the DIP Facility Liens or Replacement Liens, or realization on the Collateral, in accordance with the DIP Facility Documents or this Order by the DIP Agent, any DIP Lender, or any Prepetition Secured Party, or (B) any Avoidance Actions against any DIP Agent, any DIP Lender, or any Prepetition Secured Party, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the Prepetition Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Indebtedness, any Prepetition Loan Document, or the Adequate Protection granted herein; provided, however, that the Committee (if appointed) shall be authorized to use up to $50,000 to investigate the liens, claims and interests of the Prepetition Secured Parties, or any other claims or causes of action against any of the Prepetition Secured Parties held by the Debtors' estates. The foregoing shall not be construed as consent to the allowance of any Professional Fees and shall not affect the right of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of any Professional Fees. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (x) reduce any Debtor's obligations owed to the DIP Agent or any of the DIP Lenders or Prepetition Secured Parties or (y) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties on and in the Collateral or Prepetition Collateral (or their respective claims against the Debtors).

6.    Investigation Rights. Notwithstanding anything herein to the contrary, until the later of (a) for parties-in-interest, seventy-five (75) days following entry of this Order

and (b) sixty (60) days following formation of the Committee (the "Investigation Termination Date") the Committee, or, if no Committee has been formed, any party-in-interest, shall be entitled to investigate the validity, amount, perfection, priority, and enforceability of the Prepetition Liens and Prepetition Indebtedness, or to assert any other claims or causes of action against any of the Prepetition Secured Parties held by the Debtors' estates. If the Committee (or any party-in-interest, as applicable) determines that there may be a challenge to the Prepetition Secured Parties' prepetition liens, claims or security interests, by the Investigation Termination Date, the Committee (or any party-in-interest, as applicable) may file a motion or otherwise initiate an action to seek standing by the Investigation Termination Date (either, a "Standing Motion") to prosecute an objection or claim related thereto. If such Standing Motion is not filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Debtors and the Prepetition Agent (on behalf of the Prepetition Secured Parties) or by order of this Court as provided below), the Debtors' Stipulations and any consideration granted as adequate protection hereunder in this Order shall be irrevocably binding on the Committee and all parties-in-interest without further action by any party or this Court. The Investigation Termination Date may not be extended unless (a) the Prepetition Agent (on behalf of the Prepetition Secured Parties) and the Debtors each consents in writing to an extension or (b) the filing of a motion seeking an extension before the expiration of the Investigation Termination Date and the entry of a Court order granting such an extension (regardless of whether such order is entered after the Investigation Termination Date).

7. Section 506(c) and 552(b) Waivers. Effective upon entry of a Final Order providing for such relief (if authorized), with the exception of the Carve-Out and except as otherwise permitted by the DIP Facility, neither the Collateral nor the DIP Agent, any DIP Lender, or any Prepetition Secured Party, nor any of their claims, shall be subject to any costs or

expenses of administration that have been or may be incurred at any time, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtors or any other party in interest without the prior written consent of the DIP Agent, and no such consent shall be implied from any action, inaction, or acquiescence by any party, including, but not limited to, funding of the Debtors' ongoing operations by the DIP Agent and DIP Lenders. Effective upon entry of a Final Order providing for such relief (if authorized), the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived. Neither the DIP Agent nor any of the DIP Lenders or Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral or Prepetition Collateral.

8.     Authorization to Use Cash Collateral. The Debtors are immediately authorized pursuant to sections 105, 361, 363, 541 and 553 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, to use Cash Collateral; provided, however, that upon the closing and funding of the DIP Facility, all cash collected by the Debtors in the ordinary course of their operations shall be paid to the Prepetition Agent to pay down Prepetition Revolver Advances outstanding under the Prepetition Credit Agreement. To fund the Debtors' working capital and other general corporate needs pending the Final Hearing, in accordance with the terms of this Order, the DIP Facility Documents and the 13-Week Budget, the Debtors will request Advances under the DIP Facility. In the event there are out of the ordinary course sales of Prepetition Collateral prior to the Final Hearing, the net cash proceeds of such sales shall be applied to the Prepetition Indebtedness. Upon entry of a Final Order providing for such relief (if authorized), any remaining Prepetition Revolver Advances shall be paid from the Advances under the DIP Facility in accordance with paragraph 9(a) hereof, and thereafter, the Debtors shall receive Advances under the DIP Facility to fund the Debtors' working capital and other general

corporate needs in accordance with the terms of the Final Order, the DIP Facility Documents and the 13-Week Budget

9. Adequate Protection of Prepetition Secured Parties. In consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition Liens, the Prepetition Secured Parties shall receive the following (collectively the "Adequate Protection"):

(a) Pay Down. Upon entry of a Final Order providing for such relief (if authorized), the Debtors shall pay from Cash Collateral or advances under the DIP Facility, the remaining outstanding Prepetition Revolver Advances (the "Pay Down").

(b) Adequate Protection Liens. To the extent there is a diminution in the Prepetition Secured Parties' interests in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the imposition of the automatic stay (including, without limitation, any diminution in value of the Prepetition Collateral prior to the Prepetition Secured Parties seeking vacation of the automatic stay or the Court granting such relief), the priming of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral), the Prepetition Agent, on behalf of the Prepetition Secured Parties is granted replacement liens (the "Replacement Liens") in the Prepetition Collateral, which Replacement Liens which are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the DIP Liens and the Permitted Prior Liens and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and which such Replacement Liens shall cover assets, interest, and proceeds of the Debtors that are or would be collateral under the Prepetition

Loan Documents if not for Bankruptcy Code section 552(a) and all cash and cash equivalents. Such Replacement Liens shall be subject only to (i) the Carve-Out, (ii) the Permitted Prior Liens, and (iii) the Investigation Rights set forth in paragraph 6 hereof.

(c)     Administrative Claim.  The Prepetition Agent (on behalf of the Prepetition Secured Parties) is hereby granted in each of the Debtors' Cases an allowed administrative claim (the "Administrative Claim") under Bankruptcy Code section 507(b) with respect to all Adequate Protection obligations, to the extent that the Replacement Liens do not adequately protect the diminution in the value of the Prepetition Collateral and such Administrative Claim shall be junior and subordinate only to any superpriority claim of the kind specified in, or ordered pursuant to, section 364 of the Bankruptcy Code, which Adequate Protection obligations and Administrative Claim shall be (i) payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (with the exception of the Avoidance Actions); and (ii) subject to the Carve-Out and any Permitted Prior Liens.

(d)     Access.  The Prepetition Secured Parties shall be afforded continued reporting as to Collateral amounts and reasonable access to the Collateral and the Debtors' business premises, during normal business hours, for purposes of verifying the Debtors' compliance with the terms of this Order as it pertains to the Prepetition Secured Parties.

(e)     Adequate Protection Payments.  The Debtors shall timely pay to the Prepetition Agent from Cash Collateral or advances under the DIP Facility amounts as they accrue in connection with the Prepetition Indebtedness, including, without limitation, the current cash payment of interest charged on the Prepetition Indebtedness at the times provided for in the Prepetition Credit Agreement, cash management fees, expenses and charges and letter of credit fees and commissions.  Notwithstanding the foregoing, the adequate protection payments

provided for herein shall exclude any principal amortization payment on the Term Loan scheduled prior to completion of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

        (f)    Right to Credit Bid.  Upon entry of a Final Order providing for such relief (if authorized), the Prepetition Agent (on behalf of the Prepetition Secured Parties) shall have the right to "credit bid" the amount of the Prepetition Secured Parties' claims during any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

        (g)    The automatic stay is modified as to the Prepetition Secured Parties to allow implementation of these provisions, without further notice or order of the Court.

        10.    Reimbursement of Fees and Expenses.  The Debtors shall promptly reimburse the Prepetition Agent, the Prepetition Secured Parties, the DIP Agent and the DIP Lenders for their reasonable costs, fees (including, without limitation, reasonable attorneys' and financial advisors' fees and expenses), charges, and expenses incurred in connection with the Cases or under the DIP Facility, whether incurred prepetition or postpetition, within ten (10) business days (if no written objection is received within such ten (10) business-day period) after such professional has delivered an invoice substantially in the form delivered in the ordinary course of business describing such fees and expenses; provided, however, that any such invoice may be redacted to protect privileged, confidential or proprietary information.  A copy of each invoice submitted shall be delivered to the U.S. Trustee and counsel to the Committee (if appointed) at the same time the invoice is delivered to the Debtors.  Any written objection to such fees or expenses must contain a specific basis for the objection and a quantification of the

undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. None of such costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the United States Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, that to the extent the Debtors fail to reimburse the Prepetition Agent, the Prepetition Secured Parties, the DIP Agent and/or the DIP Lenders for any such fees and expenses that are not subject to objection, the applicable professionals shall be permitted to apply any amounts held in escrow or retainer (whether obtained prior to, on, or after, the Petition Date) against such unpaid fees and expenses without the need to file any application with the Court; provided, further, that the Court shall have jurisdiction to determine any dispute concerning such invoices; provided, however, if an objection to a professional's invoice is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

11. Restrictions on the Debtors. Other than the Carve-Out and the Permitted Prior Liens, no claim or lien having a priority superior or *pari passu* with those granted by this Order to the DIP Agent, DIP Lenders or the Prepetition Secured Parties shall be granted by any Debtor, while any obligations under the DIP Facility (or refinancing thereof) or any Prepetition Indebtedness remains outstanding without the written consent of the DIP Agent and Prepetition Agent. Except as expressly permitted by the DIP Facility Documents and this Order, the Debtors will not, at any time during the Cases, grant mortgages, security interests, or liens in the Collateral or any portion thereof pursuant to section 364(d) of the Bankruptcy Code or otherwise.

12.     Additional Perfection Measures.  Neither the DIP Agent nor any DIP Lender or any Prepetition Secured Party shall be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Order (including, without limitation, taking possession of any of the Collateral, or taking any action to have security interests or liens noted on certificates of title or similar documents).  Notwithstanding the foregoing, the DIP Agent or any DIP Lender may, in its discretion, file this Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code.

13.     Access to Collateral – No Landlord's Liens.  Upon entry of a Final Order providing for such relief (if authorized) and subject to applicable state law, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, for the benefit of the DIP Lenders, contained in this Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Documents and paragraph 14 below, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Agent may, subject to any separate agreement by and between such landlord and the DIP Agent (the "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to the Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from such landlord; provided, that, subject to the Separate Agreement, the DIP Agent shall only pay rent of the Debtors that first accrues after the written

notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph; provided, however, the provisions of this paragraph shall not apply to any leased premises subject to the Spirit Lease.

14.    Automatic Stay. Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence of any Event of Default, and delivery by the DIP Agent of written notice of its intent to exercise remedies (a "Remedies Notice") in each case given to the Debtors and their counsel, counsel to the Committee (if appointed) and the United States Trustee, the DIP Agent shall be entitled to exercise its rights and remedies in accordance with the DIP Facility Agreement without further order of this Court beginning five (5) days following delivery of the Remedies Notice (the "Remedies Notice Period"); provided, however, immediately upon the commencement of the Remedies Notice Period and thereafter: (i) the DIP Lenders may charge default rates of interest (ii) the Debtors shall have no right to use any Collections or Collateral except for (A) payment of the Prepetition Indebtedness and the Postpetition Indebtedness, and (B) payment of payroll and other expenses in accordance with the terms of the 13-Week Budget; and (iii) any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility Agreement shall be suspended. During the Remedies Notice Period, the Debtors, the Committee (if appointed) and/or the U.S. Trustee shall be entitled to an emergency hearing before this Court; provided, however, that after the expiration of the Remedies Notice Period, without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed vacated and the DIP Agent and the DIP Lenders may exercise all rights and remedies provided for in the DIP Facility Documents. Notwithstanding the occurrence of an Event of Default or termination of the commitments under any DIP Facility

Agreement or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the DIP Agent and DIP Lenders under the DIP Facility Documents and this Order shall survive the date of termination of the DIP Facility. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay with respect to the DIP Agent and DIP Lenders. Notwithstanding the foregoing, solely with respect to real property leasehold premises, the Secured Parties' rights are limited to (1) further order of the Court, (2) agreement with the landlord, or (3) applicable state law.

15.   Binding Effect. The provisions of this Order shall be binding upon and inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, the Committee (if appointed), and their respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or any successor case, including the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Order.

16.   Survival. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in any of the Cases (and, to the extent not satisfied in full in cash, the Postpetition Indebtedness shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge), (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting any of the Cases to a chapter 7 case unless permitted under the DIP Facility Documents, or (d) to the maximum extent permitted by law, dismissing any of the Cases unless permitted under the DIP Facility Documents, and notwithstanding the entry of any such order, the terms and provisions of this Order shall continue in full force and effect, and the DIP Facility Superpriority Claims, DIP

Facility Liens and Adequate Protection granted pursuant to this Order and/or the DIP Facility Documents shall continue in full force and effect and shall maintain their priority as provided by this Order and the DIP Facility Documents to the maximum extent permitted by law until all of the Postpetition Indebtedness is indefeasibly paid in full in cash or otherwise addressed pursuant to a confirmed plan.

17.    After-Acquired Property.  Except as otherwise provided in this Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Agent, on behalf of the DIP Lenders, pursuant to the DIP Facility Documents and this Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

18.    Access to the Debtors.  In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and employees of the DIP Agent and the DIP Lenders to have reasonable access to the Debtors' premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as is reasonably requested.

19.    Authorization to Act.  Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay

interest, fees and all other amounts as provided under this Order and the DIP Facility, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Order, including, without limitation:

        (a)     the execution of the DIP Facility Documents;

        (b)     the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Debtors, the DIP Agent, and the DIP Lenders may agree in accordance with the terms of the DIP Facility; provided, however, that notice of any material modification or amendment (including any waiver of any Event of Default) shall be provided to counsel for the Committee (if appointed) and the U.S. Trustee, each of which will have five (5) days from the date of delivery of such notice within which to object in writing; provided further, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

        (c)     the non-refundable payments to the DIP Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Facility Agreement, and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents.

        20.     Insurance Policies. Upon entry of this Order, the DIP Agent and DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the Collateral. After the Pay Down, any insurance proceeds or other receipts from any source that relate to the Collateral and are paid to any Prepetition Secured Party shall

be immediately delivered to the Debtors and subject to the DIP Facility Liens and the terms of the DIP Facility Documents.

21.     Subsequent Reversal.  If any or all of the provisions of this Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court:  (a) such modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of any Debtor to the DIP Agent, DIP Lenders or Prepetition Secured Parties that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "Effective Date"), or (ii) the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, Adequate Protection or other grant authorized or created by this Order and the DIP Facility Documents that is or was incurred prior to such party receiving written notice of the Effective Date; (b) the Postpetition Indebtedness and Adequate Protection pursuant to this Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the provisions of this Order in effect immediately prior to the Effective Date and the DIP Facility Documents; and (c) the use of Cash Collateral and the validity of any financing provided or security interest granted pursuant to this Order and the DIP Facility Documents is and shall be protected by section 364(e) of the Bankruptcy Code.

22.     Effect of Dismissal of Cases.  If the Cases are dismissed, converted or substantively consolidated, then neither the entry of this Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Agent and DIP Lenders under their respective documents or this Order, and all of the respective rights and remedies thereunder of the DIP Agent and DIP Lenders shall remain in full force and effect as if the Cases had not been dismissed, converted, or substantively consolidated.  If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with sections 105 and

349 of the Bankruptcy Code) that (i) the DIP Facility Liens and DIP Facility Superpriority Claims granted to and conferred upon the DIP Agent and DIP Lenders and the protections afforded to the DIP Agent and the DIP Lenders pursuant to this Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Postpetition Indebtedness shall have been paid and satisfied in full in cash (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens, DIP Facility Superpriority Claims and Adequate Protection, and (iii) any hearing on a motion to dismiss any of the Cases shall require at least twenty (20) days' prior notice to the DIP Agent, unless otherwise ordered by the Court for good cause shown.

23.     Findings of Fact and Conclusions of Law. This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.

24.     Controlling Effect of Order. To the extent any provision of this Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or any DIP Facility Documents, the provisions of this Order shall control.

25.     Final Hearing. A final hearing on the Motion shall be heard before this Court on __MAY__ __10__, 2010 at __12__ : __3 0__ __p__.m. ( __EDT__ ) at the United States Bankruptcy Court for the District of Delaware, [6th Floor, Ctrm 1], Wilmington, Delaware.

26.     Adequate Notice. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2). Within three (3) business days after the Court's entry of this Order, the Debtors shall mail copies of this Order and notice of the Final Hearing to the Notice Parties and all landlords of the Debtors. Any party in interest objecting to

the relief sought in the Final Order shall submit any such objection in writing and file same with the Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than  MAY   6 , 2010 at   4 :  0 0 p .m. ( EDT ) on the following:

        (a)    **Goulston & Storrs, P.C.** 400 Atlantic Boston, Massachusetts 02110-3333 Attn: Douglas Rosner, Esq. and Mary Ellen Welch Rogers, Esq. Fax No.: 617-574-7827, proposed counsel to the Debtors;

        (b)    **Richards, Layton & Finger , P.A.**, Daniel DeFranceschi, Esq. (DE No. 2732), Drew G. Sloan (DE No. 5069), Julie A. Finocchiaro (DE No. 5303), 920 North King Street Wilmington, Delaware 19801, Fax No.:: (302) 651-7701, proposed local counsel to the Debtors;

        (c)    **Paul, Hastings, Janofsky & Walker LLP**, 600 Peachtree Street, N.E., Suite 2400, Atlanta, Georgia 30308 (Attn: Jesse H. Austin, III, Esq. and Cassie Coppage, Esq.), counsel to the Prepetition Agent and the DIP Agent;

        (d)    **Duane Morris LLP**, 1100 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Richard W. Riley, Esq.), local counsel to the Prepetition Agent and the DIP Agent;

        (e)    **Office of the United States Trustee for the District of Delaware**, 44 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Joseph McMahon, Esq.).

Dated: April 26, 2010

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE