UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> MAGIC BRANDS, LLC, *et al.*,[1] <br><br><br> Debtors. | ) Chapter 11 <br> ) <br> ) Case No. 10-11310 (BLS) <br> ) (Jointly Administered) <br> ) <br> ) **Bid Procedures Objection Deadline: May 6, 2010** <br> ) **at 4pm (ET)** <br> ) **Bid Procedures Hearing Date: May 10, 2010 at** <br> ) **12:30pm (ET)** <br> ) **Sale Objection Deadline: T/B/D** <br> ) **Sale Hearing: T/B/D** |

**OBJECTION OF FIDELITY NEWPORT HOLDINGS, LLC AND AMERICAN
BLUE RIBBON HOLDINGS, LLC TO DEBTORS' MOTION FOR ORDERS
(I) APPROVING BIDDING PROCEDURES FOR THE SALE OF ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES
PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE,
(II) APPROVING CERTAIN BIDDING PROTECTIONS, (III) APPROVING THE
FORM AND MANNER OF NOTICE OF THE SALE AND ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES,
(IV) SCHEDULING AN AUCTION AND SALE HEARING
AND (V) APPROVING SUCH SALE**

Fidelity Newport Holdings, LLC ("FNH") together with its wholly owned subsidiary, American Blue Ribbon Holdings, LLC (together with FNH, "ABRH"), hereby file this objection (the "Objection") to the Debtors' Motion (the "Motion")[2]: (i) seeking entry of the Bidding Procedures Order, (a) approving the Bidding Procedures as well as certain proposed bid protections in connection with the sale of assets pursuant to the Asset Purchase Agreement (the "Tavistock APA") by and between the Debtors and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Magic Brands, LLC ("Magic") (8989); Fuddruckers, Inc. ("Fuddruckers") (8267); Atlantic Restaurant Ventures, Inc. ("Atlantic") (9769); King Cannon, Inc. ("King Cannon") (8671); and KCI, LLC ("KO") (9281). The address for all of the Debtors is 5700 Mopac Expressway, Suite C300, Austin, Texas 78749.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

certain non-debtors as Sellers and Tavistock Ventures, Inc. ("Tavistock") as Purchaser, (b) scheduling the Auction and Sale Hearing, and (c) approving the form and manner of the Sale Notice; and (ii) approving the Sale Order [Dkt. No. 21], and in support of the Objection, respectfully state as follows:

## PRELIMINARY STATEMENT

1. Together with this Objection, ABRH has filed with the Court an executed asset purchase agreement for the sale of the Assets to ABRH (the "ABRH APA"), along with a redline of the ABRH APA against the Tavistock APA.[3] The ABRH APA contains terms and conditions identical to the Tavistock APA, except that it includes improved provisions with respect to both price and buyer bid protections. The purchase price is higher: the ABRH APA provides for $41 million cash purchase price instead of $40 million from the Tavistock APA (or, in the event the Spirit Master Lease is not assumed, then $32 million instead of $31 million). Unlike the Tavistock APA, the ABRH APA provides for no break-up fee and no expense reimbursement whatsoever. The ABRH APA's superior purchase price and accompanied savings to the Debtors' estates of not having to pay a break-up fee mandates denial of the Break-Up Fee and Expense Reimbursement, as no break-up fee is necessary to ensure a competitive auction process. ABRH is ready, willing and able to both pay more and proceed without buyer protections; consequently a break-up fee is not necessary to induce a higher bid that otherwise would not have been made.

2. It is possible that the Debtors may nonetheless assert that granting these bid protections is somehow actually necessary to induce an initial stalking horse

---

[3] A copy of the ABRH APA is attached to the Objection as Exhibit A-1. Exhibit A-2 contains a redline comparing the ABRH APA against the Tavistock APA.

bidder for an auction. This is not only irrelevant but factually inaccurate. This is not a case of ABRH showing up late to the process. There is an ongoing auction and has been for some time. ABRH has played a key role in that auction since it was invited at inception, including when it became the first $40 million bidder. The Debtors, apparently, took that $40 million price to Tavistock, but then inexplicably gave ABRH no opportunity to better its bid after Tavistock matched it – notwithstanding the Debtors' investment bankers' assurances that ABRH addressed all of the Debtors' issues raised and that another draft purchase agreement would be forthcoming. The decision not to take the Tavistock bid back to ABRH – which was fully engaged in the bidding process – and instead simply select Tavistock as stalking horse, was commercially unreasonable and not in the best interest of the Debtors' estates.

3. The Court should deny the Motion because ABRH is very much engaged in the bidding process and it has come forth not only with the highest bid, but one not subject to a break-up fee. ABRH, a nationally recognized restaurant company and franchisor, is willing to pay $1 million more than Tavistock and serve as the stalking horse under the <u>same</u> APA without any break-up fee or expense reimbursement provision whatsoever. In light of this, the Debtors cannot possibly meet their burden to demonstrate that either the Break-Up Fee or the Expense Reimbursement (totaling 3.5% of the purchase price, or $1.4 million under the Tavistock APA) is or was necessary to induce a competitive auction to achieve the highest and best offer for the Sale. The law in this Circuit, recently reiterated in <u>In re Reliant Energy Channelview LP</u>, 594 F.3d 200 (3d Cir. 2010), is clear: where the Debtors cannot demonstrate that a break-up fee is

necessary to produce an underlying benefit and preserve the value of the estate, a break-up fee cannot be awarded.

## FACTS

4. FNH is a Delaware limited liability company, formed by Fidelity National Special Opportunities, Inc. ("FNSO"), Newport Global Opportunities Fund, L.P. ("Newport") and other co-investors. FNSO's parent, Fidelity National Financial, Inc. (NYSE: FNF), is currently ranked number 366 on Fortune's list of America's largest companies. As of December 31, 2009, FNF had $7.8 billion in assets generating $5.8 billion in revenue and $222 million in net income. Newport Global Advisors, L.P. is a privately owned investment manager. American Blue Ribbon Holdings, LLC is a Delaware limited liability company.

5. ABRH operates family-style restaurants under the brand names Bakers Square and Village Inn, and franchises restaurants under the Village Inn brand name. As of May 4, 2010, ABRH operated 266 ABRH-owned and franchised restaurants in 23 states. ABRH-owned and franchised restaurants are concentrated in Colorado, Arizona, Florida, the Rocky Mountain region and the upper Midwest. In addition, ABRH operates two bakery manufacturing facilities located in Oak Forest, Illinois, and Chaska, Minnesota, and a cold storage distribution center located in Chicago, Illinois, which produce bakery goods for ABRH-owned restaurants, franchisees and third party customers.

6. In February, 2010, Hazem Ouf, president and chief executive officer of ABRH, was approached by Rod Guinn of Focal Point, the Debtors' investment banker, about the possibility of entering a transaction to purchase the Debtors' businesses. On February 18, 2010, John Reid of Focal Point, on behalf of Mr. Guinn,

4

submitted a "teaser" to ABRH, together with a draft non-disclosure agreement. Following negotiations, on March 11, 2010, ABRH entered into a non-disclosure agreement with the Debtors. On March 26, 2010, ABRH submitted a letter of intent to Mr. Guinn under which ABRH proposed to purchase the Debtors' businesses. On March 31, 2010, following discussions between Mr. Ouf and Mr. Guinn, ABRH submitted a revised bid addressing concerns raised by Mr. Guinn. The March 31 letter provided for an increased purchase price (in the range of $34 - $36 million) and the removal of any financing contingency.

7. On April 5, 2010, on behalf of the Debtors, Focal Point submitted a proposed Asset Purchase Agreement (the "Proposed APA") to ABRH. On April 14, 2010, the deadline to submit bids to the Debtors, ABRH submitted via email its bid to the Debtors for their businesses. The email included a mark-up to the Proposed APA (the "Mark-Up APA") in clean and redline form and a bid cover letter. The Mark-Up APA provided for the sale of substantially all of the Debtors' assets to ABRH for cash consideration of $40 million and a 10% cash deposit at signing. Copies of the email and its attachments are attached to the Declaration of Hazem Ouf in Support of the Objection, attached hereto as Exhibit B (the "Ouf Declaration").

8. During the marketing process, notwithstanding multiple requests, the Debtors' management would not meet with ABRH. Despite several requests and attempts by ABRH for a meeting or a conference call with management, this was never granted. Notwithstanding the Debtors' unwillingness to meet with ABRH, the Debtors made eight management presentations to other bidders in this time period. (See Decl. of

Gregor Grant in Support of Chapter 11 Petitions and First Day Pleadings at 34 [Dkt. No. 15]).

9. On April 16, 2010, during a conference call with Focal Point, ABRH was informed that it was one of two finalists to become the stalking horse bidder and that ABRH had offered a higher purchase price, but that the Mark-Up APA had more changes to the Proposed APA than the other bidder, presumably Tavistock. Therefore, the parties arranged for a second conference call – to be "all hands" – less than two hours later to discuss six areas of concern the Debtors identified with the Mark-Up APA. Outside counsel, both for the Debtors and for ABRH, attended the "all hands" call as did Focal Point and ABRH's principals. During the "all hands" call, ABRH and its counsel addressed these six concerns and a few others raised, at least in principle. The parties agreed that the "all hands" call was productive, and ABRH finished the call satisfied that it adequately addressed the issues raised. Indeed, the Debtors' own investment banker, Mr. Guinn, stated in an email to Mr. Ouf hours after the call: "We haven't yet connected with the client, so we cannot tell you that (or whether) you've been selected. However, all parties were satisfied with the results of this afternoon's call, so we are turning a redraft of the APA to be sent to you and your counsel, incorporating those areas of discussion and all the other, usual areas we intend to focus on as we move forward." Copies of the email are attached to the Ouf Declaration.

10. Following that positive communication from Mr. Guinn, neither ABRH nor its counsel received a redraft or any substantive communications from the Debtors for that matter until the following evening, Saturday, April 17, when ABRH learned that the Debtors granted exclusivity to another stalking horse.

11.     On April 20, 2010, ABRH's counsel submitted a letter to the Debtors' counsel explaining ABRH's surprise and disappointment with the stalking horse selection process and expressing ABRH's continued interest in the Assets. Through the letter, counsel requested, inter alia, copies of the pertinent sale documents when filed with the Court and copies of the disclosure schedules. ABRH received no response to the April 20 letter.

12.     Since the Petition Date, ABRH has continued on multiple fronts to indicate its interest in becoming the lead bidder. Those attempts include reaching out to the Debtors on a counsel-to-counsel basis, and calls Mr. Ouf made to Mr. Guinn. While ABRH has given every indication that it is prepared to increase its bid in advance of the bid procedures objection deadline, the Debtors have made no attempt since April 16 to engage ABRH in any meaningful discussions.

## **OBJECTION**

A. **The Requested Break-Up Fee and Expense Reimbursement Is Not Actually Necessary; and a Higher Bid Has Been Obtained Without the Inclusion of a Break-Up Fee or Expense Reimbursement**

13.     The allowability of break-up fees is determined on the same basis as other post-petition expenses under section 503(b) of the Bankruptcy Code in that the requesting party must demonstrate that the fees are actually necessary to preserve the value of the estate. Reliant, 594 F.3d at 208-09 (3d Cir. 2010) (affirming denial of break-up fee where third party asserted that it was prepared to make a higher and better offer prior to entry of the bid procedures order); Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.), 181 F.3d. 527, 535-37 (3d Cir. 1999) ("such a benefit could be found if assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which

7

bidding would have been limited"). The "business judgment rule should not be applied." Id. at 535.

14. A break-up fee is only allowed provided that it "does not give an advantage to a favored purchaser over other bidders by increasing the cost of acquisition." Reliant, 594 F.3d at 206. Here, a break-up fee and expense reimbursement would give an advantage to Tavistock by forcing ABRH to bid an additional $1.4 million to cover the fee and expenses, notwithstanding the fact that ABRH is prepared to bid $1 million more for the assets today. A break-up fee here is not necessary to promote competitive bidding, i.e., the standard set forth in O'Brien. See O'Brien, 181 F.3d at 537. Competitive bidding is already occurring.

15. It is simply not credible to maintain that a "stalking horse bid" is actually necessary to preserve the value of the estate by serving as a catalyst for other bids when ABRH has submitted a higher and better bid without a break-up fee. See, e.g. In re Phila. Newspapers, LLC, No. 09-11204SR, 2009 Bankr. LEXIS 3167, at *11-13 (Bankr. E.D. Pa. Oct. 8, 2009) (rev'd on other grounds); In re Beth Isr. Hosp. Ass'n, No. 06-16186(NKW), 2007 Bankr. LEXIS 2386, at *11-15 (Bankr. D. N.J. July 12, 2007).

### B. The Motion Should Also Be Denied Because the Debtors' Marketing Process Was Flawed

16. The Debtors' marketing process did not maximize the value of their estates. The Debtors cut off from the process the bidder who had made the highest offer and who indicated preparedness to address any concerns raised by the Debtors that undercut the support that it was the best offer. The Debtors entered into the Tavistock APA even though it was clear that ABRH continued to be a ready and willing participant

YCST01:9621856.1                                                                      069442.1001

at the bargaining table. Simply put, there is no commercially reasonable rationale explaining why the process stopped when Tavistock matched ABRH's bid.

17. ABRH submitted its bid on the Debtors' imposed bid deadline. ABRH's bid, at $40 million, was the highest. The Debtors selected ABRH as one of two finalists. Two days later, the Debtors expressed concerns with ABRH's Mark-Up APA, but, following an all hands conference call held hours later, indicated that these concerns were adequately addressed and that they would shortly turn the asset purchase agreement for ABRH's review. One day later, the Debtors awarded exclusivity to Tavistock – at ABRH's price – and gave ABRH no opportunity to counter and no explanation why they never turned a revised asset purchase agreement. Notwithstanding Tavistock's selection, ABRH has clearly at all times indicated its interest in the purchase of the Debtors' business. This indication has culminated in an improved bid from ABRH, now in advance of the bid procedures hearing.

18. The Debtors simply cannot prove that providing Tavistock with bid protections is actually necessary to induce an initial bidder; ABRH is here today as an initial bidder without such protections.

C. **Standing**

19. To the extent that the Debtors wish to avoid the merits here, they may well try to convince this Court that ABRH should not be heard. This they cannot do. At a minimum, an aggrieved bidder has standing to object if there were irregularities in the bidding process. See In re Colony Hill Assocs., 111 F.3d 269, 273-74 (2d Cir. 1997) (finding unsuccessful bidder had standing to challenge "intrinsic fairness" of bankruptcy sale and good faith status of purchaser); In re Harwald Co., 497 F.2d 443, 444-45 (7th

9

YCST01:9621856.1                                                                                              069442.1001

Cir. 1974) (noting that unsuccessful bidders may challenge sale "on equitable grounds related to the intrinsic structure of the sale"); In re Donohue, 410 B.R. 311, 316 (Bankr. D. Kan. 2009) (potential bidder allowed standing to challenge a sale). Reliant is an example of where this Court has heard the objection of a non-creditor, aggrieved bidder in the past. See In re Reliant Energy Channelview LP, et al., Case No. 07-11160 (MFW), March 18, 2008.

20. In this case, standing is warranted not only due to irregularities in the sales process, i.e., the premature selection of Tavistock, but also because ABRH comes to Court with a bid higher and better than the Tavistock bid in advance of the bid procedures hearing. Clearly, ABRH, through its Objection, assists the Court in determining whether the Break-Up Fee and Expense Reimbursement are actually necessary.

## NOTICE

21. Notice of this Objection has been provided to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel to the Creditors' Committee; (iv) counsel to the agent for the Debtors' postpetition secured lenders; and (iv) those parties who have formally appeared and requested service pursuant to Bankruptcy Rule 2002. In light of the relief requested, ABRH submits that no further notice is necessary.

*[The remainder of this page is intentionally left blank.]*

WHEREFORE, ABRH respectfully requests that the Court enter an Order (A) denying the Motion and (B) granting such other and further relief as is just and proper.

Dated: May 6, 2010
Wilmington, Delaware

Respectfully submitted,

/s/ Joseph Barry
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Joseph Barry (No. 4221)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19801
Telephone: (302) 571-6600
Fax: (302) 571-1253

- and -
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Andrew N. Rosenberg
Jonathan T. Koevary
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
Fax: (212) 757-3990

*Counsel for Fidelity Newport Holdings, LLC and American Blue Ribbon Holdings, LLC*

11