# EXHIBIT 1

**Bidding Procedures**

RLF1 3571231v. 2

# BIDDING PROCEDURES

On April 22, 2010, Magic Brands, LLC and its debtor affiliates, (collectively, the "Debtors"), filed a motion (the "Motion") for orders (I) approving bidding procedures for the sale of assets free and clear of all liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code, (II) approving certain bidding protections, (III) approving the form and manner of notice of the sale and assumption and assignment of executory contracts and unexpired leases, (IV) scheduling an auction and sale hearing and (V) approving such sale. The Debtors have agreed to sell substantially all of their assets to Tavistock Ventures, Inc. (the "Stalking Horse Bidder") pursuant to the terms of a certain asset purchase and sale agreement dated as of April 21, 2010 (the "Asset Purchase Agreement"),[1] subject to Bankruptcy Court approval and subject to higher and better offers. Copies of the Asset Purchase Agreement are available for free by (i) sending a written request to the Debtors' claims and noticing agent, Kurtzman Carson Consultants ("KCC"), 2335 Alaska Avenue, El Segundo, CA 90245, (ii) calling KCC at (877) 499-4519, or (iii) by accessing KCC's website at www.kccllc.net/Fuddruckers.

The following procedures (the "Bidding Procedures") shall govern the auction process by which the Debtors will accept and consider higher and better offers for any of their assets, including the Purchased Assets (as defined in the Asset Purchase Agreement). Nothing in these Bidding Procedures shall constitute the consent of the Prepetition Agent or the Committee (both as defined below) to any bid:

1. Any party desiring to become a prospective bidder for any of the Debtors' assets, including the Purchased Assets ("Prospective Bidder"), shall deliver to the Debtors, unless previously delivered, a signed confidentiality agreement in form and substance satisfactory to the Debtors ("Confidentiality Agreement").

2. After a Prospective Bidder delivers the Confidentiality Agreement, the Debtors shall deliver or make available (unless previously delivered or made available) to each such Prospective Bidder certain designated information and financial data with respect to the Purchased Assets.

3. Any party that submits a bid for the Purchased Assets (a "Competing Offer") which the Debtors, in consultation with Wells Fargo Capital Finance, Inc. (the "Prepetition Agent") and the Official Committee of Unsecured Creditors (the "Committee"), determine to be compliance with the relevant provisions of paragraph 4 below shall be designated as a "Qualified Bidder." The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The Prepetition Agent shall also be deemed to be a Qualified Bidder pursuant to its right to credit bid in accordance with section 363(k) of the Bankruptcy Code.

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

4. To be considered, each Competing Offer (excluding any credit bid submitted by the Prepetition Agent) shall:

(a) be in writing and delivered by facsimile and email to (i) Goulston & Storrs, P.C., 400 Atlantic Avenue, Boston, Massachusetts 02110 (Attn: Douglas B. Rosner, Esq. (drosner@goulstonstorrs.com; fax: (617) 574-7627) and Christine D. Lynch, Esq. (clynch@goulstonstorrs.com; fax: (617) 574-7540)); (ii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com; fax: (302) 498-7816)), (iii) FocalPoint Securities, LLC, 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025 (Attn: Alexander W. Stevenson (astevenson@focalpointllc.com; fax: (310) 405-7077)); (iv) counsel to the Committee, Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178 (Attn: James S. Carr, Esq.)(jcarr@kelleydrye.com; fax: (212) 808-7897)) and Klehr Harrison Harvey Branzburg LLP, 919 Market Street, Suite 1000, Wilmington, DE 19801 (Attn: Domenic E. Pacitti, Esq.)(dpacitti@klehr.com; fax: (302) 426-9193)); and (v) counsel to the Prepetition Agent, Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree Street, N.E., Twenty-Fourth Floor, Atlanta, GA 30308 (Attn: Jesse H. Austin, III, Esq. (jessaustin@paulhastings.com; fax: (404) 685-5208)) and Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Richard W. Riley, Esq. (RWRiley@duanemorris.com; fax: (302) 397-0801)) **no later than 4:00 p.m. (prevailing Eastern Time) on June 14, 2010** (the "Bid Deadline");

(b) at a minimum, exceed the sum of (i) the cash portion of the Purchase Price set forth in Section 3.1(a) of the Asset Purchase Agreement, plus (ii) the Break-Up Fee and Expense Reimbursement, plus (iii) $600,000, for a total of $41,000,000 (if the Debtor is able to assign certain leases subject to a certain Master Lease with Spirit Master Funding, LLC (the "Spirit Locations")) or $32,000,000 (if the Debtor is unable to assign the Spirit Locations) (the "Minimum Overbid Amount");

(c) be accompanied by a signed asset purchase agreement in the form of the Asset Purchase Agreement, together with a marked copy showing all changes to the Asset Purchase Agreement, which changes shall not be less favorable to the Debtors and their estates in any material respect;

(d) must include in the signed asset purchase agreement a representation that the Prospective Bidder should be bound by the privacy policy posted at www.fuddruckers.com with respect to any personally identifiable information (as that term is defined in Section 101(41A) of the Bankruptcy Code) collected and maintained by the Debtors pre-closing;

(e) not be subject to, or conditioned on, any contingency or condition (other than entry of an order approving the sale), including without limitation, the outcome of unperformed due diligence by the bidder or upon any financing contingency;

2

(f) be irrevocable until the earlier to occur of (i) the Closing Date, or (ii) for sixty (60) days following entry of the Sale Order;

(g) be submitted with a cash deposit equal to 10% of the purchase price offered in the Competing Offer (the "Deposit") in the form of a wire transfer or a certified check made payable to the Debtors and sent to the Debtors' counsel, which Deposit shall be non-refundable if the Bankruptcy Court approves the sale of the Debtors' assets to such Qualified Bidder;

(h) be substantially on the same or better terms and conditions as set forth in the Asset Purchase Agreement; and

(i) be submitted with evidence substantially equivalent to that provided by the Stalking Horse Bidder establishing to the satisfaction of the Debtors, in consultation with the Prepetition Agent and the Committee, that such Prospective Bidder or an entity that has executed a written guarantee of such Prospective Bidder's Bid has readily available funds sufficient to enable it to timely consummate its Competing Offer and provide all non-debtor parties to those executory contracts and unexpired leases to be assumed and assigned with adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.

5. Competing Offers that the Debtors, in consultation with the Prepetition Agent and the Committee, determine satisfy the provisions set forth in paragraph 4 above shall be deemed "Qualified Bids." A Qualified Bid will be valued by the Debtors based upon any and all factors that the Debtors deem pertinent, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating a transaction with the Qualified Bidder, (c) any excluded assets or executory contracts or leases, and (d) any other factors that the Debtors may deem relevant to the sale in consultation with the Prepetition Agent and the Committee.

6. If the Debtors do not receive any Qualified Bids (other than the bid of the Stalking Horse Bidder), the Debtors will report the same to the Bankruptcy Court, and the Debtors shall proceed to seek court approval of the Asset Purchase Agreement with the Stalking Horse Bidder.

7. In the event that one or more Qualified Bid (excluding the bid of the Stalking Horse Bidder) is received, an auction (the "Auction") will be conducted at the offices of Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 **on June 17, 2010, beginning at 10:00 a.m. (prevailing Eastern Time)** or such later time or other place as the Debtors shall notify all Qualified Bidders. Only representatives of the Stalking Horse Bidder, Qualified Bidders, the Debtors, the Committee, the Prepetition Agent and the United States Trustee for the District of Delaware will be entitled to attend the Auction. Only the Stalking Horse Bidder and Qualified Bidders will be entitled to make bids at the Auction. At the Auction, bidding will commence at the amount of the aggregate consideration for the Purchased Assets and on the terms proposed in the Qualified Bid that the Debtors, in consultation with the Committee, select

as the highest and best offer prior to the Auction, and each subsequent bid shall be in increments of no less than $250,000. Bidding at the Auction will continue until such time as the highest and best offer is determined by the Debtors in consultation with the Prepetition Agent and the Committee (the "Successful Bid") (the party submitting such Successful Bid being designated the "Successful Bidder"). The Debtors, after consultation with the Prepetition Agent and the Committee, may announce at the Auction additional rules or procedures for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

8. The Debtors reserve the right, after consultation with their professionals, the Prepetition Agent and the Committee, to (i) determine, at their discretion, which bid, if any, is the highest and best offer, taking into consideration, inter alia, that the Break-Up Fee and Expense Reimbursement would be payable if a party other than the Stalking Horse Bidder is the Successful Bidder, (ii) reject any bid that the Debtors deem to be inadequate, insufficient or otherwise unsatisfactory, (iii) change the location of the Auction, and/or (iv) adjourn the Auction by announcing such adjournment at the Auction. The Debtors' presentation to the Bankruptcy Court for approval of the selected bid as the Successful Bid does not constitute the Debtors' acceptance of such bid. The Debtors will have accepted a Qualified Bid only when such Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

9. All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction and the sale of the Purchased Assets.

10. If, for any reason, the Successful Bidder fails to close on the purchase of the Purchased Assets (and assuming that the conditions to closing have been satisfied), then: (i) the Successful Bidder shall forfeit the Deposit and be subject to such other rights and remedies as the Debtors may have for such failure; (ii) the Qualified Bidder who, as of the conclusion of the Auction, has made the second and the next highest and best bid (as determined by the Debtors in consultation with the Prepetition Agent and the Committee) automatically will be deemed to have submitted the highest and best bid without further order of the Bankruptcy Court (such bidder, the "Alternate Bidder"); and (iii) the Alternate Bidder will be required to proceed as the purchaser at closing and its bid will be treated as the Successful Bid without further order of the Bankruptcy Court.

11. Prospective Bidders bidding for ten or fewer of the Debtors' owned or leased restaurant locations and/or for the Debtors' non-real estate assets (each, a "Partial Bid"), need not conform such Partial Bid to the Asset Purchase Agreement used by the Stalking Horse Bidder, and instead may submit such Partial Bid with an executed alternative purchase and/or assignment agreement, provided however that the terms of such alternative agreement (other than bid amount) shall not be less favorable to the Debtors and their estates in any material respect than the corresponding terms of the Asset Purchase Agreement, as applicable. The Debtors, in consultation with the Prepetition Agent and the Committee shall determine whether such Partial Bids constitute Qualifying Bids.

Such Partial Bids shall conform to the requirements of paragraph 4 herein with the exception of subparagraphs (b) and (c) thereof.

12. If such Partial Bid includes any Spirit Locations, the bidder shall specify the amount of the bid price that is allocated to the Spirit Locations.

5

RLF1 3571232v.1