IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MAGIC BRANDS, LLC, *et al.*, | ) | Case No. 10-11310 (BLS) |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | **Related Docket No. 267** |
| | ) | |

**Hearing Date: To Be Deterrmined**
**Objection Deadline: To Be Determined**

## MOTION OF TAVISTOCK VENTURES, INC. FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE DIRECTING PRODUCTION OF DOCUMENTS AND EXAMINATION OF WITNESSES

Tavistock Ventures, Inc. "Tavistock"), by and through its undersigned counsel,

hereby moves this court for entry of an order pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") directing certain individuals and entities

(through their representatives) identified on Exhibit "A" hereto (the "Respondents") to produce

documents as described in the document requests attached hereto as Exhibit "B" (the "Document

Requests"), and appear for examination regarding occurrences prior to and at the auction in

connection with the businesses and assets of the captioned debtors and debtors in possession (the

"Debtors"), the operations and finances of the Debtors, and the administration of their estates,

including the sale of the Debtors' assets. In support of the Motion, Tavistock respectfully

represents:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Magic Brands, LLC ("Magic") (8989), Fuddruckers, Inc. ("Fuddruckers") (8267), Atlantic Restaurant Ventures, Inc. ("Atlantic") (9769), King Cannon, Inc. ("King Cannon") (8671), and KCI, LLC ("KCI") (9281). The address for all of the Debtors is 5700 Mopac Expressway, Suite C300, Austin, Texas 78749.

## Summary of Relief Requested

1.     By this motion, Tavistock requests authority to conduct the examination of, and production of documents by, the Respondents. Tavistock requires this discovery in connection with possible collusion and other improprieties that may have occurred at or leading up to the auction held on June 17, 2010 (the "Auction") pursuant to this Court's Order (I) Approving Bidding Procedures for the Sale of Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (II) Approving Certain Bidding Protections, (III) Approving the Form and Manner of Notice of the Sale and Assumption and Assignment of Executory Contracts and Unexpired Leases, (IV) Scheduling an Auction and Sale Hearing entered on May 18, 2010 (Docket No. 267) (the "Bidding Procedures Order").

## Jurisdiction

2.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.     On April 21, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States District Court for the District of Delaware. The Debtors' cases currently are jointly administered for procedural purposes.

4.     An official committee of unsecured creditors (the "Committee") was appointed in these chapter 11 cases on May 3, 2010.

## Collusion and Other Improprieties at the Auction

## Necessitate a Rule 2004 Examination

5.     The Bidding Procedures Order sets forth the requirements for qualifying bids and requires prospective bidders to enter into confidentiality agreements.

6.     The Bidding Procedures Order was filed on the docket in these cases.  In accordance with the Bidding Procedures Order, the Auction was held on June 17, 2010 at the offices of Richards Layton & Finger in Wilmington, Delaware.

7.     At the commencement of the Auction on June 17, 2010 the Debtors' counsel announced that bidders at the Auction were prohibited from communicating with one another, and that the Auction would be conducted in accordance with the provisions of the Bidding Procedures Order.

8.     The Auction bidding was scheduled to commence at 10:00 a.m. on June 17, 2010.

9.     At the outset, 3 bidders were active: (1) Fidelity Newport Holdings, LLC ("Fidelity"); (2) Luby's Inc. ("Luby's") and (3) Tavistock.

10.     More than 40 bids were made throughout the day and evening.  At approximately 8:30 to 9:00 p.m. Luby's submitted the bid deemed highest by the Debtors, which included cash of $61 million with a possible additional payment of $2.45 million.

11.     On Tavistock's preliminary review, it appears that Luby's may not have been a qualified bidder under the Bid Procedures  Order.

12.     On Tavistock's preliminary review, it further appears Fidelity and Luby's may have improperly colluded and otherwise engaged in actions prohibited by the Bidding Procedures Order and the rules established by the Debtors at the Auction.

13.     Following the Auction, Tavistock requested that the Debtors demonstrate that Luby's met the requirements of the Bid Procedures Order.  Specifically, Tavistock requested copies of Luby's proposed asset purchase agreement and all evidence submitted by Luby's to the Debtors to demonstrate that Luby's, or a guarantor of its obligations, had readily available funds to consummate its bid and to provide adequate assurance of future performance . Based on Luby's 10-Q and 10-K filings with the SEC and their company-issued press releases, Luby's reported a net loss of $26.4 million for its fiscal year ending August 26, 2009, and reported an additional net loss of $3.4 million through its latest three quarters ending May 5, 2010.  Moreover, based on Luby's most recent 10-Q filed with the SEC, the company had cash on hand of only $7.7 million.  Based on such information, and given the fact that the Bid Procedures preclude a bidder from having any contingency in its offer, including a financing contingency, Tavistock questions whether Luby's had the financial wherewithal or readily available funds to qualify as a bidder.  The Debtors, however, have refused to provide such information.  Accordingly, Tavistock is propounding a request under Bankruptcy Rule 2004 for such information.

14.     If Luby's participated in the Auction when it was not qualified to bid, the consequences are significant.  First, Luby's' participation in the Auction would call into question the fairness of the process and compliance with the Bid Procedures Order.  Second, under the Bid Procedures Order, the bidder with the second highest bid is bound to close the transaction in accordance with its last bid should the winning bidder not consummate the deal.  Tavistock made the second to last bid.  Its final bid had a cash component of $59,060,000 less its expense reimbursement/breakup fee of $400,000.  However, Fidelity, the third bidder, submitted its final bid at $49.8 million with a possible additional payment of $1.6 million.  If Luby's was not

qualified to bid pursuant to the Bid Procedures Order and Luby's fails to close the transaction, it would be unfair to require Tavistock to close at $59.06 million, the cash price of its last bid. In that case, Tavistock would be required to pay over $9 million more than it would have had to pay had the Bid Procedures Order been followed

15.     The Bid Procedures Order provides for bid increments of $250,000. With a few exceptions, for about the first 25 bids, the bidding proceeded in increments of $250,000 until Fidelity made its last bid. That bid provided for a cash payment of $49.8 million.

16.     Shortly after Fidelity made what turned out to be its final bid, its principal, Hazem Ouf, was observed speaking with Luby's CEO, Christopher J. Pappas, for approximately five to ten minutes outside the conference room in which the Auction occurred. Concerned about the blatant violation of the Auction rules, Tavistock's CEO alerted Luby's attorney of the improper conversation. In response, Luby's counsel immediately got up and walked over to Messrs. Ouf and Pappas. As Luby's counsel approached Messrs. Ouf and Pappas, they immediately terminated their conversation and Mr. Ouf, together with all of Fidelity's representatives, quickly left the Auction and did not return.

17.     After Fidelity made it's last bid of $49.8 million, Luby's bidding strategy appeared to change radically. Rather than increase its bid in increments of $250,000 as it had generally done up to the point of Fidelity's $49.8 million bid, Luby's raised the cash component of its next bid by $3.2 million to $53 million. For each of its three subsequent bids, Luby's stayed at that cash amount, changing other aspects of its bids. Thereafter, it raised its cash bid by amounts ranging from $450,000 to $2 million per bid until it reached its final cash bid of either $61 million or, if it does not assume one of the Debtors' contracts, $63.45 million.

18. Tavistock does not know what transpired in the one known conversation between Messrs. Ouf and Pappas or in any previous conversations they might have had, or why Luby's bidding strategy appeared to change dramatically around the time the other bidders were observed in conversation. Two things, however, are clear: (1) that conversation violated the rules the Debtors imposed for the Auction; and (2) following that conversation, Mr. Ouf's company, Fidelity, ceased to bid, Luby's appeared to change its bidding strategy, and the cash price for the Debtors' assets quickly rose by $8-10 million.

19. Only the participants know the content of their one known conversation, and of any possible previous conversations. Tavistock further believes that there may have been other communications among prospective bidders and certain franchisees who Tavistock believes may have signed nondisclosure agreements or confidentiality agreements in connection with the Auction process, which conversations therefore were prohibited by the Bid Procedures and the confidentiality agreements entered into by the various parties. To ensure that the Auction was not tainted by improper conversation(s) and that the Court-approved Bid Procedures were followed, Tavistock is propounding discovery to learn what the principals of Luby's and Fidelity discussed at this critical time in the Auction, and possibly at other times prior to that point, and what other prohibited communications between various parties may have occurred. Until those facts are available, the Court cannot determine whether any violation of the Auction rules was innocent or culpable.

20. On June 18 and 21, 2010, Tavistock requested certain of the information described above from the Debtors. To date, Tavistock has received no such requested information. In accordance with Local Rule 2004-1, Tavistock certifies that in light of the Auction's concluding late in the night of June 17, 2010, the Debtors' failure to deliver any

information to Tavistock that Tavistock requested on June 18, 2010, and the imminence of the

sale hearing on the morning of June 22, 2010, there was not sufficient time for Tavistock to

confer with the other parties subject to this Motion prior to filing this Motion and accordingly

this Motion complies with such Rule.

21.     As the Respondents have refused to cooperate with Tavistock's good-faith

efforts to investigate the allegations of improper conduct, Tavistock requests relief from this

Court pursuant to Bankruptcy Rule 2004.

## Relief Requested

22.     By this Motion, Tavistock requests entry of the proposed omnibus order

directing the Respondents to produce the documents requested and appear for examination.

23.     Tavistock requests that, pursuant to Bankruptcy Rule 2004, this Court

direct the Respondents to produce at the office of Tavistock's counsel, Pachulski Stang Ziehl &

Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899,

for examination and copying, all documents described in the Document Requests.  Tavistock

seeks to compel production of the documents promptly upon entry of the proposed order.

24.     Tavistock  further requests that the Respondents appear for examination

by oral deposition under Bankruptcy Rule 2004 at the office of Tavistock's counsel concerning

these matters on or before June 29, 2010, such examination to be continued day to day until

completed.  With respect to Respondents that are not individuals, Tavistock requests that such

entities make available those employees with the most knowledge regarding the subject matter of

the Document Requests.

25.     Tavistock reserves its rights to seek additional documents and depositions based on any information that may be revealed as a result of the foregoing Document Requests and examinations.

### Tavistock Has Good Cause to Seek the
### Requested Bankruptcy Rule 2004 Discovery

26.     Tavistock's request for documents and proposed examinations falls squarely within the scope of Bankruptcy Rule 2004 because they relate to issues affecting, *inter alia*, the properties and the liabilities of the Debtor.  Bankruptcy Rule 2004 provides, in relevant part, as follows:

(a)     Examination on Motion.  On motion of any party in interest, the court may order the examination of any entity.

(b)     Scope of Examination.  The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

(c)     Compelling Attendance and Production of Documentary Evidence.  The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

27.     A Rule 2004 examination is "designed to bring the Debtor's affairs to light, not to hide them." *In re PRS Ins. Group, Inc.*, 274 B.R. 381, 385 (Bankr. D. Del. 2001). The scope of discovery under Bankruptcy Rule 2004 is " generally very broad." *In re Mezvinsky*, 2000 Bankr. LEXIS 1067, *21 (Bankr. E.D. Pa. 2000); *see also In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 445 (Bankr. D. N.J. 1998) (citing the "broad scope" of Rule 2004); *In re Valley Forge Plaza Ass'n*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) ("Rule 2004 permits a party invoking it to undertake a broad inquiry of the examiner, in the nature of a "fishing expedition.").

28.    The standard for determining the propriety of a discovery request under

Bankruptcy Rule 2004 is "good cause." *In re Grabill Corp.*, 109 B.R. 329, 334 (Bankr. N.D. Ill.

1989); *In re 2435 Plainfield Ave., Inc.*, 223 B.R. at 446. "Under that standard, the movant must

show 'some reasonable basis to examine the material . . . [and] that the requested documents are

necessary to establish the movant's claim or that denial of production would cause undue

hardship or injustice.'" *In re Grabill*, 109 B.R. at 334, *quoting Matter of Wilcher*, 56 B.R. 428,

434-35 (Bankr. N.D. Ill. 1985).

29.    Good cause exists to conduct the proposed discovery. Bankruptcy Code §

363(n) prohibits collusion between potential buyers of a debtor's property, and the Bidding

Procedures Order governed the parties' actions at the Auction. Fidelity and Luby's may have

colluded in violation of § 363(n) and/or violated the express provisions of the Bidding

Procedures Order. Bankruptcy Rule 2004(a) states that "[o]n motion of any party in interest, the

Court may order the examination of any entity." Fed. R. Bankr. P. 2004(a).

30.    The information sought by Tavistock is critical to the determination of

whether such violations occurred.

## Notice

Notice of this Motion has been or will be served on (i) the Office of the United States

Trustee; (ii) counsel to the Debtors; (iii) counsel to Fidelity, (iv) counsel to Luby's; (v) counsel

to the Committee; (vi) all other persons that have requested notice or copies of pleadings filed in

these cases under Bankruptcy Rule 2002; and (vii) each of the Respondents identified on Exhibit

A or their counsel, if known.

31.    No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, Tavistock respectfully requests that the Court (i) direct the Respondents to produce the documents described in the Document Requests attached as Exhibit [B]; and (ii) grant Tavistock such other and further relief as is just and proper.


Dated:  June 22, 2010

PACHULSKI STANG ZIEHL & JONES LLP

Bruce Grohsgal (Bar No. 3583)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400


MICHELSON LAW GROUP
Randy Michelson
150 Spear Street, Suite 1600
San Francisco, CA  94105
Telephone:  415-512-8600
Facsimile:  415-512-8601

Counsel to Tavistock Ventures, Inc