IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                        )
                              )
MAGIC BRANDS, LLC, et al.,)   Case No.
                              )  10-11310 (BLS)
         Debtor.              )

Richards Layton & Finger
One Rodney Square, 3rd Floor
Wilmington, Delaware 19801

Thursday, June 17, 2010
12:03 p.m.

-- -- -- --

TRANSCRIPT OF AUCTION PROCEEDINGS

-- -- -- --

WILCOX & FETZER, LTD.
1330 King Street - Wilmington, Delaware  19801
(302) 655-0477
www.wilfet.com



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com



MS. LYNCH: Good afternoon,
everyone. I would like to welcome you all to the
auction for the assets of the debtors in the
cases jointly administered under the case of
Magic Brands LLC, Case No. 10-11310, which is
being conducted pursuant to bidding procedures
approved by the United States Bankruptcy Court
for the District of Delaware pursuant to an
order, dated May 18th, 2010.

My name is Chris Lynch, and I am a
partner at the law firm of Goulston & Storrs,
which is counsel to the debtors in these cases.
With me today from Goulston & Storrs are
Doug Rosner, Kitt Sawitsky and Janice Gross.
From Richards, Layton, which is Delaware counsel
to the debtors, we have Drew Sloan. And from
FocalPoint, which is the debtors' investment
bankers, we have Alex Stevenson, Rod Guinn, Brian
Little. We have also with us today Peter Large,
who is the CEO of Fuddruckers, and Gregor Grant,
who is the CFO from Fuddruckers.

Also present are representatives of
the Unsecured Creditors Committee. The
professionals representing the Creditors



1  Committee include Kelly Drye, who is counsel to

2  the committee, and we have Jim Carr and

3  Eric Wilson, here from Kelly Drye.

4          And we have FTI, which is the

5  financial advisor to the committee from FTI we

6  have Steve Simms. Steve. And we have Mark

7  Laber.

8          We also have Leslie Plaskon and

9  Cassie Coppage -- sorry if I'm mispronouncing

10 people's names -- from Paul Hastings representing

11 Wells Fargo, which is the secured lender to the

12 debtor.

13         So I'll outline the rules of the

14 auction in a moment. But, first, we want to

15 confirm that in consultation with the Creditors

16 Committee and Wells Fargo we've determined that

17 there are three qualified bids, as that term is

18 defined in the bidding procedures. The first is

19 that of a stalking horse Tavistock Ventures,

20 Inc.; the second is a bid from Fidelity Newport

21 Holdings, LLC; and the third is a bid from

22 Luby's, Inc.

23         Now, some of the auction rules.

24 There is a sign-in sheet, which I think all of



1    you have signed in. Any of you who have not

2    signed it, please do so at the next break. We

3    would like each of the qualified bidders to

4    designate one representative who will speak on

5    behalf of the bidders. The proceedings today are

6    being recorded. So we ask that the bidder

7    representative identify himself or herself for

8    the record when speaking.

9            We will announce momentarily the

10   amount of the opening bid. Bid increments will

11   be $250,000. And the debtors do reserve the

12   right to change the bid increment at any time.

13           We're permitting each bidder to bid

14   off of its own asset purchase agreement since we

15   have concluded that there are no material

16   differences among the three forms that affect

17   value. Of course, the bids selected at the end

18   of the auction as the highest and best bid is not

19   deemed to have been accepted by the debtors until

20   the Court has approved the bid.

21           We do note that each of the qualified

22   bids was for the same asset pool as contained in

23   the stalking horse bid. We received no partial

24   bids, as that term is defined in the bidding



1     procedures.

2          We did receive one bid for the

3     Bloomington and St. Louis Park locations. And

4     I'll explain the details of that in a minute.

5          During each round of bidding, we're

6     asking bidders to submit a bid for all of the

7     locations except those subject to the Spirit

8     Master Lease and a bid for all those locations

9     including those subject to the Spirit Master

10     Lease.

11          Pursuant to the bidding procedures,

12     all bids are irrevocable until the earlier of the

13     closing date or 60 days following the entry of

14     the order approving the sale.

15          We will permit bidders to take

16     breaks, but we reserve the right to impose time

17     restrictions on the breaks. And we do have a

18     hard stop of 9:00 p.m. tonight. Hopefully, we

19     won't be anywhere close to there. But

20     Celtics-Lakers, we all have to be done by then.

21          Of course, bidders are not permitted

22     to communicate with one another.

23          All questions about the business

24     should be directed in the first instance to Alex.



1  Alex Stevenson or Rod Guinn.  All procedural or

2  legal questions should be directed in the fist

3  instance to me or my partner Doug Rosner.

4  I'd like to announce some details

5  about the Minnesota locations.  There are two

6  Fuddruckers locations, Bloomington and St. Louis

7  Park Minnesota that are currently occupied by an

8  entity owned by Ralph Flannery.  By order dated

9  June 7th, 2010 the bankruptcy court granted the

10  debtors' motion to reject certain agreements that

11  Mr. Flannery claimed gave him the right to run

12  those restaurants.  On June 11th, 2010, the

13  debtors commenced an action to evict Mr. Flannery

14  from those locations in Minnesota state court.

15  Luby's has agreed to buy the right to

16  direct the litigation against Flannery and

17  designation rights for those two Minnesota

18  leases.  Luby's has agreed that they will fund

19  the litigation.  And if we are successful in

20  obtaining possession and control of those

21  locations, Luby's has agreed to pay the estate an

22  additional $200,000.

23  The estate will keep all claims that

24  it currently has against Flannery.



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1    So the opening bid is that of Luby's

2    Inc. at $42,600,000 for all locations, including

3    Spirit and $34,600,000 for all locations except

4    the Spirit locations.  Plus $200,000 to be paid

5    on the successful resolution on the Flannery

6    litigation.

7    So, again, bid increments are

8    250,000.  The next bid that we would accept would

9    be for 42,850,000 with Spirit and 34,850,000

10   without Spirit.  Plus the contingent fees.

11   MR. WERKHEISER:  For the record --

12   MS. LYNCH:  Can you identify

13   yourself, please.

14   MR. WERKHEISER:  Sure.  Gregory

15   Werkheiser, Morris, Nichols, Arsht & Tunnell.  I

16   just wanted to clarify one thing.  There may come

17   a point in time where a party may decide to not

18   bid on either the Spirit included or Spirit

19   excluded locations but may want to make a bid on

20   the other, and I just want to be clear that we

21   have that option.

22   MS. LYNCH:  Yes, that's correct.  Any

23   round of bidding, you may bid on both options or

24   just one.



1          MR. WERKHEISER:  Okay.  Thank you.

2          MS. LYNCH:  Any other questions

3  before we begin?  Is either Tavistock or Fidelity

4  Newport to make a bid at this time.

5          MS. MICHELSON:  Chris.

6          MS. LYNCH:  Yes.

7          Randy Michelson, on behalf of

8  Tavistock we.  Had indicated that we wanted to

9  take a short break after we heard what you had to

10  say.  And we'd like to do that now.

11          MS. LYNCH:  Yes, that's fine.  So we

12  can go off the record.

13          (Recess taken at 12:11 p.m. and

14  reconvened at 12:37 p.m.)

15          MS. LYNCH:  All right.  Just a few

16  clarifications at the outset.  I said that we're

17  permitting bidders to bid off their own forms.

18  To be clear, we're permitting bidders to bid off

19  their own forms with such changes that we and the

20  bidder have agreed to.  For example, with Luby's,

21  we've agreed to make certain modifications to

22  their form primarily making it a clear that the

23  outside closing date for the transaction is

24  July 9th.  Also, the schedules to the APA have

1   been further updated.  We will have hard copies

2   available shortly.  The changes are primarily

3   those necessary to reflect the new deal on

4   Minnesota.  And they also disclose the

5   infringement, which everyone is aware of, by the

6   Flannery entity.

7          And regarding the Minnesota deal,

8   another term of Luby's' deal is that Luby's will

9   be liable to pay all restaurant level expenses,

10  including rent incurred by the estate, for those

11  locations during the pendency of the litigation.

12          Any questions?

13          Okay.  Fidelity Newport or Tavistock

14  wish to make a bid at this point?

15          MR. ROSENBERG:  Andrew Rosenberg,

16  Paul Weiss Rifkind Wharton & Garrison, for

17  Fidelity Newport.  We bid 42850, and we will

18  adopt the Minnesota terms as they've been

19  described.

20          UNIDENTIFIED SPEAKER:  Andy, what

21  about the non-Spirt locations?

22          MR. ROSENBERG:  We're just bidding

23  with the Spirit locations.

24          MS. LYNCH:  Is Fidelity Newport



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1 increasing the contingent piece of the bid? Ross

2 the Minnesota piece?

3             MS. LYNCH: Yes.

4             MR. ROSENBERG: Why don't we call it

5 the Minnesota piece. We're matching the

6 Minnesota piece.

7             MS. LYNCH: So I think the next round

8 of bidding with the 250 overbid would be a bid of

9 $43,100,000 with Spirit, and we're still at --

10 are we still at 34,850,000 without Spirit?

11             MR. SIMMS: 34-6.

12             MS. LYNCH: $34,600,000 without

13 Spirit.

14             MR. SIMMS: Plus the Minnesota

15 locations.

16             MS. LYNCH: Plus the Minnesota

17 locations.

18             Yes. Can you identify yourself for

19 the record.

20             MR. PAPPAS: Chris Pappas for the

21 Luby's bid. We will do the 43,100,000.

22             MS. LYNCH: And the other terms stay

23 the same?

24             MR. PAPPAS: Yes.

1          MS. LYNCH:  And no bid without

2     Spirit?

3          MR. PAPPAS:  No bid without Spirit.

4          MR. ROSENBERG:  Andy Rosenberg, Paul

5     Weiss.  Chris, are you thinking of some type of

6     an order?

7          MS. LYNCH:  Well, I think it's now to

8     American Blue Ribbon or Tavistock.

9          MR. WERKHEISER:  I'm sorry.  Gregory

10    Werkheiser.  I think we'd like some clarification

11    that if a party doesn't bid in a given round

12    whether they remain in the bidding or not.

13         MS. LYNCH:  We'll take a break to

14    decide that.  Off the record.

15         (Recess taken at 12:45 p.m. and

16    reconvened at 12:50 p.m.)

17         MS. LYNCH:  Okay.  We have decided

18    there will be a bidding order, and bidders are

19    allowed to pass during a round of bidding.

20         MR. WERKHEISER:  Gregory Werkheiser.

21    I am just going to note an objection to that

22    process for the record.

23         MS. LYNCH:  Duly noted.

24         So we are now to Tavistock.  The mid

1    is $43,300 who.

2              MR. MARKANTONIS:  I have a question.

3              MS. LYNCH:  Yes.

4              MR. MARKANTONIS:  Frank Markantonis.

5    That needs a little bit of clarification.  If a

6    bidder bids and then seconds a round, another bid

7    passes, if another bidder passes, does that mean

8    that the bidder wins the round?

9              MS. LYNCH:  No.

10             MR. MARKANTONIS:  Then what's the

11   purpose of the pass?

12             MS. LYNCH:  You can pass during one

13   round of bidding and then it's back to the bidder

14   that passed initially.

15             MR. WERKHEISER:  For the record,

16   again, Gregory Werkheiser.  Is it just one pass

17   for the entire auction?

18             MS. LYNCH:  No, unlimited passes.

19             MR. WERKHEISER:  So you can pass

20   multiple times?

21             MS. LYNCH:  Yes.

22             MR. MARKANTONIS:  But if the bidder

23   passes again, then the bid stands, and that's the

24   winner?

1    MS. LYNCH:  In the same round.  At

2    that point, we would ask for final bids.

3    Okay.  So we're at $43,350,000 with

4    the Spirit locations to Tavistock.

5    MR. GOFF:  This is Barry Goff for

6    Tavistock.  We bid 43-350 and the same 200 for

7    Minnesota.

8    MS. LYNCH:  So to confirm.  You're

9    adopting the terms that we stated on the record

10   for the Minnesota piece of the transaction?

11   MR. GOFF:  Yes.

12   MS. LYNCH:  And you're matching the

13   consideration of $200,000?

14   MR. GOFF:  Yes.

15   MS. LYNCH:  So now we're at

16   $43,600,000 to Fidelity Newport.

17   MR. ROSENBERG:  Andrew Rosenberg,

18   Paul Weiss.  Fidelity Newport bids 43,600,000

19   plus matches Minnesota.

20   MS. LYNCH:  Okay.  We're to Luby's,

21   $43,850,000.

22   MR. PAPPAS:  Chris Pappas.  And we

23   bid $43,850,000.

24   MS. LYNCH:  And the terms on the

1  Minnesota piece stay the same?

2              MR. PAPPAS:  They stay the same.  Do

3  we need to repeat that each time?

4              MS. LYNCH:  I think just for the

5  record, yes, you should.

6              MR. PAPPAS:  Each time?

7              MS. LYNCH:  Yes, just for the record.

8              MR. PAPPAS:  Including the Minnesota

9  piece.

10             MS. LYNCH:  So we're to Tavistock,

11 $43,100,000.

12             MS. MICHELSON:  We'd like to take a

13 break to talk with you Chris about how to value

14 an alternative Minnesota bid.

15             MS. LYNCH:  Okay.  Off the record.

16             (Recess taken at 12:56 p.m. and

17 reconvened at 2:08 p.m.)

18             MS. LYNCH:  Okay.  I would like to

19 just remind everybody that there is a $400,000

20 breakup fee that is payable to Tavistock if they

21 are not the winning bidder.  And under the bid

22 procedures, the debtor and the committee will

23 take that into account in evaluating bids.

24             So the next bid is to Tavistock.



1        MS. MICHELSON:  Chris, Randy

2    Michelson.  I need to clarify that statement.

3    Does that mean -- well, can you explain how you

4    would calculate if Tavistock bid --

5        THE COURT REPORTER:  Can you come

6    forward?  I can't hear you.

7        MS. MICHELSON:  I wanted to clarify

8    that issue on the credit or on the breakup fee

9    expense reimbursement of $400,000.  Does that

10   mean that a bid of Tavistock's has a credit

11   applied to it of $400,000 as a result?

12       MS. LYNCH:  No, it does not.

13       MR. CARR:  This is Jim Carr on behalf

14   of the committee.  We're not going to answer the

15   question now.  We're going to evaluate it at the

16   end and determine who is the highest or otherwise

17   best bid.

18       MS. MICHELSON:  Well, we need to

19   understand whether our bid is the face amount or

20   a different amount.  That's the issue 'cause --

21       MS. LYNCH:  The bid is the face

22   amount.

23       MS. MICHELSON:  Okay.  Thank you.

24       MS. LYNCH:  So the bid is to

1   Tavistock.  We're up to $44,100,000.

2              MR. GOFF:  Yes.  Barry Goff for

3   Tavistock.  If I understood what you just said

4   correctly, then our bid is $43,700 with Spirit

5   and 200,000 to Minnesota bid.

6              UNIDENTIFIED SPEAKER:  Can you say

7   the number again?

8              MR. GOFF:  $43,700,000.  Plus 200,000

9   for the Minnesota conditioned --

10             UNIDENTIFIED SPEAKER:  That's the

11  opposite of what you just said.

12             MS. LYNCH:  Everybody, please.  First

13  of all, one person speaking at a time.  Second,

14  you have to identify yourself for the record the

15  proceedings are being recorded.  If you have

16  something to say, it's easier for the person

17  taking the record to come up front and speak.

18             MR. GOFF:  Barry Goff with Tavistock.

19  We have two ways of bidding.  One is we can bid

20  on this one 44,100,000 with the assumption that

21  we get a $400,000 credit or we can bid 43,700,000

22  I can do it either way.  Just tell me what you

23  want me to do.

24             MS. LYNCH:  I thought it was clear.

We're not entitling you to take a credit.  So the
bid is to you at $44,100,000.

MR. GOFF:  I bid $43,700,000, with
200,000 on Minnesota conditioned as everyone else
has expressed.

MS. LYNCH:  Can you repeat that bid?

MR. GOFF:  It's 43,700,000 with
Spirit.  $200,000 for the Minnesota property on
the same condition everyone has expressed up to
this point.

MS. LYNCH:  The next --

MR. MARKANTONIS:  Frank Markantonis.
The last bid before Tavistock's bid was how much
money?

MS. LYNCH:  Luby's' bid was
$43,850,000, including Minnesota.

MR. MARKANTONIS:  What is the next
appropriate bid on the minimum going forward?

MS. LYNCH:  Well, we would in
evaluating that bid deduct the breakup fee
because we would have to pay that breakup fee to
Tavistock if Luby's was the winning bidder at
that point.

MR. MARKANTONIS:  What is the next

1  acceptable bid under your rules?

2              MS. LYNCH:  Tavistock's bid of

3  $43,700,000 is higher.

4              MR. WERKHEISER:  Gregory Werkheiser.

5  Can you explain how you're calculating that for

6  the record?

7              MS. LYNCH:  We're calculating it

8  because if we deducted 400,000 from Luby's' bid

9  of $43,850,000, it would be $43,450,000.

10             MR. MARKANTONIS:  Further, the

11 question, I thought you said you were going to do

12 that after the bidding was over and the Creditors

13 Committee was going to decide what the

14 appropriate bid was.  I didn't think you were

15 allowing the credit to go forward in this bidding

16 stage.  You said you weren't going to do it in

17 this process, you were going to let the committee

18 decide after the bidding was over.

19             (Recess taken at 2:15 p.m. and

20 reconvened at 2:17 p.m.)

21             MS. LYNCH:  We have decided to allow

22 Tavistock to take a $400,000 credit in every

23 round if they so choose.

24             MR. GOFF:  We will choose for the

1  record.

2  MS. LYNCH: So, Barry, would you

3  please restate Tavistock's bid.

4  MR. GOFF: Yes. This is Barry Goff

5  with Tavistock. So I don't have to say it every

6  time, can we just say that all of our bids will

7  be under the assumption that we have a $400,000

8  credit. If we bid the higher number, we pay the

9  lower number.

10  Our bid is $44,100,000 with Spirit

11  and 200,000 for Minnesota on the conditions that

12  everyone else has expressed.

13  MR. WERKHEISER: Just for the record,

14  this is Gregory Werkheiser. The Minnesota offer

15  was 600,000 plus 200,000, is that the offer for

16  each --

17  MS. LYNCH: No.

18  MR. SIMMS: Steve Simms. It was all

19  worked into one thing, one purchase price for all

20  of the locations, and the rights to Minnesota

21  plus a 200,000 contingency.

22  MR. WERKHEISER: Yeah, you're right.

23  MR. SIMMS: There is no breakout

24  between the Minnesota locations.

1              MR. WERKHEISER: That's fine.

2              MS. LYNCH: So bidding is to ABR.

3 Sorry. Fidelity Newport.

4              MR. ROSENBERG: Andrew Rosenberg,

5 Paul Weiss. If I understood everything, I

6 believe the bid we're required to make to be the

7 high bid at this point is 44-350 plus Minnesota.

8              MS. LYNCH: Bidding to Luby's.

9              MR. PAPPAS: Chris, would you repeat

10 his bid, please?

11              MS. LYNCH: The last bid we have is a

12 bid from Fidelity Newport at 44,350,000 plus

13 Minnesota.

14              MR. PAPPAS: When you say plus

15 Minnesota, it's 200,000? Is that correct?

16              MS. LYNCH: Yes.

17              MR. PAPPAS: The Tavistock bid, I was

18 under the impression that it appeared to be

19 44,300,000 and not 44,100,000 because he had

20 200,000 on top of the 100.

21              MS. LYNCH: No. The 200,000 is just

22 separate. So it was 44-1 less -- plus the 200

23 contingent. It was 44,100,000 less the 400,000

24 breakup fee. That's 43 --

1    UNIDENTIFIED SPEAKER:   44-1.

2    MR. SIMMS:   44-1 plus 200,000.

3    Everybody puts 200,000 contingent.   Until we hear

4    differently, that's the number.

5    MR. PAPPAS:   So to Luby's.   We bid

6    44,600,000 plus the $200,000 Minnesota.

7    MS. LYNCH:   Bidding is to Tavistock.

8    MR. GOFF:   This is the last time I'll

9    mention our credit -- this is Barry Goff from

10   Tavistock -- so there is clarity.   Subject to our

11   getting 400,000 credit, our bid is 44,850,000.

12   And we will again to do the 200,000 for

13   Minnesota.

14   MS. LYNCH:   Bidding to Fidelity

15   Newport.

16   MR. ROSENBERG:   I have a question.

17   Just going back to something earlier that --

18   Andrew Rosenberg, Paul Weiss.   I'll get the hang

19   of that before this is over.

20        In terms of passing, if I understood

21   the rules of this, we could always simply choose

22   to pass and then have the right to jump back in

23   after someone's final bid, whenever we -- if we

24   so choose?

1          MS. LYNCH:  Yes, that's correct.

2          MR. ROSENBERG:  We're going to take a

3     couple-minute break just to discuss how we want

4     to proceed.  Okay.

5          MS. LYNCH:  Yes.

6          MR. ROSENBERG:  Thank you.

7          (Recess taken at 2:37 p.m.)

8          MS. LYNCH:  Bidding is to Fidelity

9     Newport.

10          MR. ROSENBERG:  Andrew Rosenberg,

11     Paul Weiss.  What was the last bid from

12     Tavistock?

13          MS. LYNCH:  $44,850,000 plus

14     Minnesota at 200,000.

15          MR. ROSENBERG:  Fidelity Newport bids

16     45,100,000 plus Minnesota.

17          MS. LYNCH:  Bidding to Luby's.

18          MR. PAPPAS:  This is Chris Pappas.

19     Luby's bids 45,350,000 plus the Minnesota

20     properties.

21          MS. LYNCH:  Bidding to Tavistock.

22          MR. GOFF:  Barry Goff with Tavistock.

23     We will bid 45,600,000 and 200,000 for Minnesota.

24          MS. LYNCH:  Bidding to Fidelity

1  Newport.

2          MR. ROSENBERG:  Fidelity Newport bids

3  45,850,000 plus Minnesota.

4          MS. LYNCH:  Bidding to Luby's.

5          MR. PAPPAS:  Chris Pappas.  Luby's

6  bids $46,100,000 plus the Minnesota properties.

7          MS. LYNCH:  Bidding to Tavistock.

8          MR. GOFF:  Tavistock bids $46,350,000

9  plus 200,000 for Minnesota.

10          MR. ROSENBERG:  Fidelity Newport bids

11  46,600,000 plus Minnesota.

12          MS. LYNCH:  Bidding to Luby's.

13          MR. PAPPAS:  Luby's bids $46,850,000.

14          MS. LYNCH:  Plus Minnesota?

15          MR. PAPPAS:  Plus Minnesota.

16          MS. LYNCH:  Tavistock.

17          MR. GOFF:  Sure.  Barry Goff with

18  Tavistock.  Just a reminder to everyone about our

19  $400,000 credit.  We will bid $47,100,000, and

20  $200,000 for Minnesota.

21          MR. ROSENBERG:  We're going to take a

22  short break.

23          MS. LYNCH:  Yes.

24          (Recess taken at 2:41 p.m. and



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1  reconvened at 2:57 p.m.)

2              MS. LYNCH:  We're back on the record.

3              MR. ROSENBERG:  What was the last

4  bid?

5              MS. LYNCH:  Tavistock's bid was

6  $47,100,000 plus Minnesota.

7              MR. ROSENBERG:  Fidelity Newport bids

8  48 million plus Minnesota.

9              MS. LYNCH:  Luby's.

10             MR. PAPPAS:  This is Chris Pappas.

11 Luby's bids $48,250,000 plus Minnesota.

12             MS. LYNCH:  Tavistock.

13             MR. GOFF:  Yes, this is Barry Goff.

14 We'd like to ask for a short break.  Thank you.

15             MS. LYNCH:  Okay.

16             (Recess taken at 2:58 p.m. and

17 reconvened at 3:24 p.m.)

18             MS. LYNCH:  The bidding is to

19 Tavistock.

20             MR. GOFF:  The last bid was?

21             MS. LYNCH:  The last bid was that of

22 Luby's, $48,250,000.  Plus Minnesota.

23             MR. GOFF:  Okay.  This is Barry Goff

24 from Tavistock.  $48,500,000.  $200,000 for



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1    Minnesota.

2                    MS. LYNCH:   Fidelity.

3                    MR. ROSENBERG:   Was that 200 or 250

4    for Minnesota?   I assume it was 200.

5                    MR. GOFF:   I thought I said 200.

6    Maybe I misspoke.   $48,500,000 and 200,000 for

7    Minnesota.

8                    MR. ROSENBERG:   Otherwise no change

9    in the Minnesota rule.

10                   $48,750,000 plus Minnesota.

11                   MS. LYNCH:   To Luby's.

12                   MR. PAPPAS:   $49,250,000, plus

13   Minnesota.   From Chris Pappas for Luby's.

14                   MS. LYNCH:   So Luby's' bid is

15   $49,250,000 plus Minnesota.

16                   To Tavistock.

17                   MR. GOFF:   Tavistock will bid

18   $49,550,000, and 200 for Minnesota.

19                   MR. ROSENBERG:   We'd like a short

20   break.

21                   MS. LYNCH:   Andy, did you request a

22   break?

23                   MR. ROSENBERG:   Yes.   Sorry.   We'd

24   like a short break.

1          MS. LYNCH:  Yes.

2              (Recess taken at 3:27 p.m. and

3      reconvened at be 4:33 p.m.)

4          MS. LYNCH:  I think we're bidding to

5      Fidelity National.

6          MR. ROSENBERG:  Correct.  Fidelity

7      National bids $49,800,000.  In addition, we will

8      assume the Pepsi contract with the caveat that we

9      can always reject that contract in lieu of that

10     and pay $1.6 million.  And we are also willing to

11     modify our APA to reduce the number of potential

12     lease rejections from 20 to 10 maximum.  Plus

13     Minnesota.

14         MR. STEVENSON:  Can you repeat that

15     again, please?

16         MR. ROSENBERG:  $49,800,000 plus

17     assumption of the Pepsi contract, which we

18     reserve the right prior to closing to instead

19     reject the Pepsi contract and in lieu thereof pay

20     $1.6 million.  We are also modifying the

21     provision of the APA that says you can reject up

22     to 20 leases to say you can only reject up to 10

23     leases.

24         MR. STEVENSON:  Alex Stevenson for



1  the debtors. Can we just clarify one point, that

2  the bid is $49.8 million of cash plus the

3  assumption of the Pepsi contract or the payment

4  of $1.6 million of cash plus the reduction of the

5  number of leases you can reject from 20 to 10.

6          MR. ROSENBERG: Yeah. Plus

7  Minnesota.

8          MR. STEVENSON: Plus Minnesota.

9          MR. ROSENBERG: Yes.

10          MR. MARKANTONIS: What is the

11  monetization of the rejection of only ten leases

12  as opposed to 20?

13          MR. SIMMS: Steve Simms from the

14  creditors. The debtor and the Creditors

15  Committee, we value that 250,000 cash equivalent

16  value. 250,000 cash equivalent value.

17          MR. PAPPAS: Chris Pappas.

18  Clarification. On the assumption of the Pepsi

19  lease or the 1.6, whose choice is it?

20          MR. SIMMS: You have to ask the

21  bidder.

22          MR. ROSENBERG: It's our choice.

23          MR. PAPPAS: It's your choice?

24          MR. ROSENBERG: Correct.



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1           MR. MARKANTONIS:  Can we take a

2    break.

3           (Recess taken at 4:36 p.m. and

4    reconvened at 4:41 p.m.)

5           MS. LYNCH:  Luby's.

6           MR. PAPPAS:  Chris Pappas.  We will

7    bid $53 million plus a million-six or the

8    assumption of the Pepsi lease as well, plus the

9    Minnesota properties.

10           MS. LYNCH:  Just to clarify.  Would

11    you please repeat your bid?

12           MR. PAPPAS:  The bid was $53 million

13    plus a million-six or the assumption of the Pepsi

14    lease plus the Minnesota properties.

15           MS. LYNCH:  I am not sure I'm hearing

16    you correctly.  Plus 1.6 million or the

17    assumption of the Pepsi contract?

18           MR. PAPPAS:  Yes.

19           MS. LYNCH:  Okay.  Mr. Pappas, do you

20    wish to also incorporate the aspect that Fidelity

21    National introduced, which was reducing the total

22    amount of leases that you could reject?

23           MR. PAPPAS:  No.

24           MS. LYNCH:  So Luby's would still

1    have the ability to reject up to 20 leases?

2                    MR. PAPPAS:  That's correct.

3                    MR. GOFF:  Tavistock would like a

4    break.

5                    MS. LYNCH:  Okay.

6                    (Recess taken at 4:44 p.m. and

7    reconvened at 5:46 p.m.)

8                    MS. LYNCH:  Bidding is to Tavistock.

9                    MS. MICHELSON:  Thank you.  Randy

10   Michelson on behalf of Tavistock.  Tavistock bids

11   $52,360,000.  That includes a $400,000 credit as

12   a breakup fee expense reimbursement.  It includes

13   a guaranteed assumption of the Pepsi contract,

14   which the estate has valued at $2.3 million.  It

15   includes a rejection of 12 rather than 20 leases.

16                   Under this bid, Tavistock would take

17   over the litigation as against the Minnesota

18   stores and receive all of the rights associated

19   with the Minnesota stores, including designation

20   rights and lease rejection rights.

21                   In addition, Tavistock would have the

22   obligation and the opportunity, the ability, the

23   option to reject leases for 45 days post closing

24   provided that Tavistock would pay occupancy costs

for leases during that period. And that includes

a bid increment of $250,000 -- I'm sorry, a

hundred-thousand-dollar bid increment.

MS. LYNCH: I'm sorry. Can you

clarify that? What do you mean by that includes

a hundred-thousand-dollar bid increment.

MS. MICHELSON: The number includes

an increment over the last bid of $100,000.

MR. GOFF: That includes a $100,000

bid increment as we understand the value assigned

by the estate to each of those component parts.

MS. LYNCH: We have a question about

the credit for the breakup fee. Are you saying

that you're bidding 52-360 cash less the 400

breakup fee?

MS. MICHELSON: Yes, consistent with

our prior bid.

MS. LYNCH: Okay.

MR. WERKHEISER: This is Gregory

Werkheiser for Luby's. I have a question on this

bid as it relates to the Minnesota portion.

Tavistock stated that Tavistock would take over

the litigation. Could I have an understanding

what that means from what was proposed

1   previously?

2           MS. MICHELSON:  Rather than funding

3   the estate to pursue litigation, Tavistock would

4   pursue litigation itself and pay for that

5   pursuit.

6           MS. LYNCH:  I think another way of

7   saying it is that the estate would assign all of

8   its claims.

9           MS. MICHELSON:  That's perfect like

10  that.

11          MS. LYNCH:  To the bidder.

12          MR. WERKHEISER:  Then I had a second

13  related question.  Tavistock would acquire all

14  rights related to the stores.  Does that mean

15  would Tavistock be acquiring the claims related

16  to the operator that was in those stores as well?

17          MS. MICHELSON:  No.

18          MR. GOFF:  We're not trying to

19  acquire the 666.  $666,000 --

20          MS. LYNCH:  So the Tavistock bid

21  excludes the claim of approximately 600,000

22  against Mr. Flannery?

23          MS. MICHELSON:  That is correct.

24          MS. LYNCH:  Or his entity.

1            MR. MARKANTONIS:  This is Frank

2    Markantonis.  I need to find out from the

3    committees how they're valuing all the component

4    parts of their bid.

5            MS. LYNCH:  I also have some

6    additional questions.  You indicated that you

7    would acquire lease designation rights with

8    respect to the two Minnesota leases.  Does that

9    also mean that Tavistock would pay or reimburse

10   the estate for all occupancy expenses incurred by

11   the estate for those locations and any other

12   expenses the estate incurs for those locations

13   during the length of the lease designation

14   rights?

15           MS. MICHELSON:  Tavistock would pay

16   occupancy costs for that period of time and no

17   other -- post closing, but no other costs.

18           MS. LYNCH:  What is the length of

19   time that you would have the lease designation

20   rights?  When would they expire?

21           MS. MICHELSON:  Until the final day

22   the estate must determine to assume or reject

23   leases, which we understand is mid-November.

24           MS. LYNCH:  The current deadline is



1   August 17th.

2            MR. ROSNER:  Well, no, November 17th

3   once we get the extension.

4            MS. LYNCH:  What's the current

5   deadline?

6            MR. ROSNER:  August.  Do you have

7   the -- I don't have the timetable.  It's

8   August 18th or something.  Is that what it is?

9   I don't have the chart in front of me.

10           MR. CARR:  120 days from the petition

11  date should take you to mid-August, and 210 days

12  should take you to November for the 365(b)(4)

13  period.

14           MS. LYNCH:  So the designation, the

15  length of the designation rights would be?

16           MR. ROSNER:  Would coincide with how

17  long we have.

18           MS. LYNCH:  Right.  Thank you, Doug.

19           MR. ROSNER:  Well, you say it.  I'm

20  not on the record.

21           MS. LYNCH:  Well, you now are.

22           MS. MICHELSON:  Tavistock expects

23  that the debtor would seek and receive the 90-day

24  extension.

MR. WERKHEISER: Sorry. For the record, Gregory Werkheiser. For the designation rights only as to the Minnesota stores or as to all of the leases?

MS. MICHELSON: Just Minnesota.

MR. WERKHEISER: Thank you.

MS. LYNCH: And some questions about another aspect of your bid. You said that Tavistock would like the ability to reject leases up to 45 days post closing. That would be the 12 leases you would have the ability to reject under your revised structure?

MS. MICHELSON: Correct.

MS. LYNCH: And during that 45-day period, would Tavistock be funding the occupancy expenses for those locations?

MS. MICHELSON: It would.

MS. LYNCH: Would Tavistock pay other restaurant level expenses for those locations during the 45 days, including payroll?

MS. MICHELSON: Tavistock would pay the expenses provided that it gets the benefit of the operations at both locations during that period of time.

1    MS. LYNCH:  Does anyone have any

2    other questions about that bid?

3            MR. SIMMS:  Do you want to repeat it?

4            MR. FUQUA:  Dick Fuqua for Luby's.

5    We need to understand how you monetize these

6    things.

7            MS. LYNCH:  The debtors have not

8    agreed to accept that bid at this point.  We need

9    to take a break and have a discussion.

10           MR. FUQUA:  Oh, okay.  I thought you

11   had.

12           MS. LYNCH:  No.

13           MR. SIMMS:  Is it worth repeating

14   what the components are, then we can talk about

15   it, or do you have it all down?

16           MS. LYNCH:  I think that --

17           MR. SIMMS:  You're good?

18           MS. LYNCH:  -- I understand the bid.

19           MR. SIMMS:  Perfect.

20           MR. PAPPAS:  You need explain to each

21   group.

22           MS. LYNCH:  We're going to take a

23   break.

24           (Recess taken at 5:57 p.m. and

1    reconvened at 6:50 p.m.)

2              MS. LYNCH:  Back on the record.  The

3    debtors and the committee value Tavistock's last

4    bid at $54,700,000.  During the break, we did

5    explain to Luby's how we arrived at that value.

6    And I don't believe they have any questions.  Is

7    that correct, Luby's?

8              MR. WERKHEISER:  This is Gregory

9    Werkheiser.  That's correct.

10             MS. LYNCH:  So bidding to Luby's.

11             MR. WERKHEISER:  Okay.  This is

12   Gregory Werkheiser on behalf of Luby's.  Luby's

13   will bid as follows:  Cash $53 million.  As to

14   the Pepsi contract, Luby's will assume or pay a

15   liquidated premium to the estate of $1.8 million

16   to reject.  As to leases other than Minnesota

17   leases, Luby's will have the opportunity to

18   reject up to 20 leases.  And we'll have that

19   option until 45 days post closing.  During that

20   period, Luby's will cover essentially the same

21   costs and on the same terms as proposed by

22   Tavistock.  As to Minnesota, Luby's would receive

23   the two Minnesota leases and associated assets,

24   and as proposed by Tavistock, designation rights.

1    The litigation related to the Minnesota

2    litigation will be continued to be prosecuted by

3    the debtors under Luby's direction and the

4    funding from Luby's and under Luby's's control.

5    And the debtors would have the opportunity for

6    the $200,000 premium if the litigation is

7    successful.  And Luby's during the period prior

8    to closing on those locations would cover

9    occupancy costs as to the two Minnesota

10   locations.

11            MS. LYNCH:  So just to clarify.

12            MR. WERKHEISER:  If I didn't say it,

13   as to the leases other than the Minnesota leases,

14   we would have the 45 days post closing for

15   rejection.

16            MS. LYNCH:  In terms of the Minnesota

17   deal, they sound the same as your original terms.

18   Have there been any changes to the original terms

19   on Minnesota?

20            MR. WERKHEISER:  I don't think so.  I

21   think it has always been the intent that we'd

22   have to have designation rights.

23            MS. LYNCH:  I think that was implied.

24            MR. WERKHEISER:  So everything is the

```
 1    the same on Minnesota.

 2              MS. LYNCH:  Were there any other

 3    questions about the Luby's bid?

 4              MS. MICHELSON:  Chris, could you tell

 5    us how the debtor values that bid?

 6              MS. LYNCH:  The value of that bid is

 7    $54,800,000 plus the 200,000 contingent

 8    consideration on Minnesota.

 9              MR. GOFF:  We have a different

10    number.  Can you clarify how you got there,

11    please?  Barry Goff, Tavistock.  Sorry.

12              MS. LYNCH:  53 million in cash.

13              MR. GOFF:  Yes.

14              MS. LYNCH:  Plus assumption or

15    1.8 million-dollar indemnity, which we're valuing

16    at $1.8 million.

17              (Discussion off the record.)

18              MR. GOFF:  This is Barry Goff from

19    Tavistock.  Can I ask for clarification?

20              MS. LYNCH:  Yes.

21              MR. GOFF:  The 200 for Minnesota, is

22    that still contingent 200?

23              MR. WERKHEISER:  Yes.

24              MR. GOFF:  That's what I thought.
```



1    The estate values the contingent 200 at?  That's

2    a question.  Or what does the estate value the

3    contingent 200 at?  600, correct?

4                MR. SIMMS:  Alex, do you want to

5    explain how -- why 160 because the other one

6    would be grossed up higher; correct?

7                MR. STEVENSON:  That's correct.  We

8    deducted from Tavistock's bid $160,000 in the

9    valuation because they took the contingent

10   consideration -- you took the contingent

11   consideration away.

12               MR. GOFF:  Sure.

13               MR. STEVENSON:  Right?  Their

14   contingent consideration is still part of their

15   bid, so there's no adjustment to their bid

16   required for that, either up or down.

17               So on an apples-to-apples basis with

18   your bid, Luby's bid is valued at 54.8 or

19   $100,000 higher than yours, which is 53 million

20   in cash plus 1.8 million indemnity.

21               MR. GUINN:  Don't you need a

22   deduction for the leases?

23               MR. STEVENSON:  No.

24               MR. GOFF:  What about the leases,

1   that fact that they're back at 20 leases?

2                MR. SIMMS:  We gave you $200,000 of

3   credit for that in your valuation, reducing the

4   number of leases you could reject from 20 to 12.

5                MR. GOFF:  Okay.

6                MR. STEVENSON:  Luby's' bid

7   previously was at 20.  It's still at 20.

8   Therefore, there is no adjustment for that either

9   way.

10               MS. MICHELSON:  There should be.

11               MR. STEVENSON:  Why?  We gave you

12  credit for it.  And theirs didn't change.  So

13  there should be no change to theirs.  And we gave

14  you value for it.  We gave you $200,000 of value.

15               MR. GOFF:  Let us process that.

16               MS. LYNCH:  So the bidding now is to

17  Tavistock.

18               MR. GOFF:  We need a minute.  Chris,

19  could you repeat how you value that bid?

20               MS. LYNCH:  The debtors and the

21  committee value Luby's' last bid at $54,800,000.

22               MR. GOFF:  Chris, we're ready.

23               Tell me how you'd like to do this.

24  We can spare everybody the brain damage and say

1  that our offer on this time is exactly like our

2  offer last time, except we're increasing the

3  52-360 to 52-560.

4          MR. CARR:  That's easier.

5          MS. LYNCH:  Yes.

6          MR. GOFF:  Good.  Glad I could help.

7          MS. LYNCH:  The debtors and the

8  committee value that bid at $54,900,000.

9          MS. LYNCH:  Bidding to Luby's.

10          MR. WERKHEISER:  Gregory Werkheiser

11  on behalf of Luby's.  Luby's would bid as it did

12  in the last round, except it would increase the

13  amount paid to the estate if it rejects the Pepsi

14  agreement to 2.3 million.

15          MS. LYNCH:  So that would be

16  53 million in cash.  On the Pepsi contract,

17  Luby's would either assume or pay the estate

18  2.3 million.  You'd have lease designation rights

19  on 20 leases for 45 days on the same terms as set

20  forth by Tavistock.  And the terms of the

21  Minnesota deal are the same as your original

22  terms.

23          MR. WERKHEISER:  As to the 20 leases,

24  we would have the opportunity to reject for 45

1    days post closing.

2              MR. GOFF:  We need a break.  We'd

3    like to talk to the estate about that offer,

4    please.  Yeah, we'd like to ask how it's valued

5    first and then caucus.  We need a break.

6              MR. CARR:  Okay.  Go ahead.

7              MS. LYNCH:  The committee has

8    requested a break.

9              (Recess taken at 7:08 p.m. and

10   reconvened at 8:19 p.m.)

11             MS. LYNCH:  Bidding to Tavistock.

12             MR. GOFF:  We'd like to remind

13   everyone that we have a -- I'm teasing.  This is

14   Barry Goff, by the way.  We are going to bid

15   $52,910,000 cash and everything else that went

16   with our last bid.  $52,910,000 cash, and

17   everything else that went with our last two bids.

18             MS. LYNCH:  Okay.  The debtors and

19   the committee are valuing that bid at

20   $55,400,000.

21             MR. WERKHEISER:  This is Greg

22   Werkheiser for Luby's.  Can you just break that

23   down into its components for valuation purposes?

24             MS. LYNCH:  Alex, can you break it

1  down?

2          MR. STEVENSON:  52,910,000 of cash,

3  2.45 million for the guaranteed assumption of the

4  Pepsi contract.

5          UNIDENTIFIED SPEAKER:  I didn't hear

6  that.

7          MR. STEVENSON:  2.45 million for the

8  guaranteed assumption of the Pepsi contract.

9  200,000 for the reduction in the number of leases

10  that can be rejected from 20 to 12.  And then

11  minus 160,000 for the removal of the 200,000 of

12  contingent consideration for Minnesota.  That

13  should total up to 55,400,000.

14          MS. LYNCH:  Luby's.

15          MR. WERKHEISER:  Give us a moment,

16  please.  A very short break.

17          MS. LYNCH:  Off the record.

18          (Recess taken at 8:24 p.m. and

19  reconvened at 8:24 p.m.)

20          MR. PAPPAS:  This is Chris Pappas for

21  the Luby's bid.  We will move our cash bid up to

22  53,550,000.  And we'll move our Pepsi bid up to

23  $2,450,000, or the assumption of, for a total of

24  $56 million, the way my calculation is.

```
1                    Chris, if you'll confirm that.
2             MS. LYNCH:  And your deal on the
3    Minnesota location stands?
4             MR. PAPPAS:  And the Minnesota.
5             MS. LYNCH:  So that's the same terms
6    and 200,000 contingent consideration.  Could you
7    also confirm for the record that your outside
8    date to decide which leases that you wish to take
9    assignment of is August 12th.
10            MR. PAPPAS:  Greg will speak to that.
11            MR. WERKHEISER:  This is Greg
12   Werkheiser for Luby's.  And we confirm that the
13   outside post closing date for designated leases
14   for assumption and assignment or rejection in
15   connection with our bid is August 12th.
16            MS. LYNCH:  So the debtors and the
17   committee confirm that Luby's' bid is valued at
18   56 million plus the 200,000 in contingent
19   consideration.
20            MR. GOFF:  We're just going to step
21   out in the hallway for a second.
22            (Recess taken at 8:29 p.m. and
23   reconvened at 8:30 p.m.)
24            MR. GOFF:  Can we have a
```



```
 1    clarification?

 2              MS. LYNCH:  Yes.

 3              MR. GOFF:  Is their assumption of the

 4    Pepsi contract guaranteed or can they still

 5    reject it?

 6              MS. LYNCH:  It was my understanding

 7    that their bid was that they would have an option

 8    to either assume the lease, and if they didn't,

 9    they would pay the estate $2.45 million.

10              MR. WERKHEISER:  This is Greg

11    Werkheiser.  That's correct.

12              MR. GOFF:  Is that consistent with

13    what -- can we ask you to come out for a second,

14    Chris?

15              MS. LYNCH:  Go off the record.

16              (Recess taken at 8:30 p.m. and

17    reconvened at 8:35 a.m.)

18              MS. LYNCH:  Tavistock.

19              MR. GOFF:  Yes.  Tavistock will

20    bid -- Barry Goff for Tavistock -- $53,610,000

21    cash.  All the same terms as our last offer with

22    two adjustments.  First, we will assume the Pepsi

23    contract or pay $2.45 million.  We'll no longer

24    do a guaranteed assumption.  And second, the
```

```
 1    deadline for lease rejections is August 12th.
 2              MS. LYNCH:  The debtors and the
 3    committee value that bid at $56,100,000.
 4              MR. PAPPAS:  And Chris, are we at 56?
 5    That's where we're at, Steve?
 6              MS. LYNCH:  Yes.
 7              MR. PAPPAS:  This is Chris Pappas for
 8    Luby's.  And we will move our cash up to
 9    $54 million.  And all the other conditions will
10    stay the same as our previous bid.  For 56450.
11    Is that what you come up with?
12              MR. STEVENSON:  That's correct.
13              MS. LYNCH:  The debtors and the
14    committee value that bid at $56,450,000.
15              Tavistock.
16              MR. GOFF:  Yes.  Barry Goff for
17    Tavistock.  We will increase our cash offer to
18    54060.  And all the same terms as our last offer.
19              MR. PAPPAS:  This is Chris Pappas.
20    We'll move our cash offer to $55 million.  And
21    everything else stays the same.
22              MS. LYNCH:  So the value of that bid
23    is $57,450,000?
24              MR. PAPPAS:  Yes, ma'am.
```

1    MS. MICHELSON:  Would you say that

2    again, please?

3          MS. LYNCH:  $57,450,000.

4          MR. GOFF:  Barry Goff for Tavistock.

5    We increase our cash offer to 55060.  And

6    everything else stays the same.

7          MR. PAPPAS:  We move our cash -- I'm

8    sorry.

9          MS. LYNCH:  The value of that bid is

10   $57,550,000.

11         Luby's.

12         MR. PAPPAS:  Yes.  We raise our --

13   Luby's raises its cash bid to 57 million, and

14   everything else stays the same, for 59-450.

15         MS. LYNCH:  Tavistock.

16         MR. GOFF:  Give us a few minutes to

17   break.

18         MS. LYNCH:  Okay.

19         (Recess taken at 8:46 p.m. and

20   reconvened at 9:00 p.m.)

21         MS. LYNCH:  Tavistock.

22         MR. GOFF:  Yes.  Bar Goff for

23   Tavistock.  Our next offer is 57,060,000 cash and

24   everything else is the same as before.

1    MS. LYNCH:  The debtors and the

2    committee value that bid at $59,550,000.

3    MR. GOFF:  Would you repeat that?

4    Was it 59 --

5    MS. LYNCH:  59,550,000.

6    MR. PAPPAS:  Luby's moves their bid

7    to 59 million in cash, and everything else stays

8    the same, for a total of $61,450,000.

9    MR. GOFF:  Chris, I am going to go in

10   the hallway with these guys real quick.  I'll be

11   back in one second.

12   (Recess taken at 9:03 p.m. and

13   reconvened at 9:05 p.m.)

14   MS. LYNCH:  Tavistock.

15   MR. GOFF:  Yes.  Tavistock will bid

16   59060 and our offer will remain the same -- the

17   rest of our offer is the same as it was before.

18   MR. PAPPAS:  Chris Pappas for Luby's.

19   We bid $61 million, and everything else stays the

20   same, for a total of 63,450,000.

21   MR. GOFF:  Give me one minute.

22   (Recess taken at 9:06 p.m. and

23   reconvened at 9:10 p.m.)

24   MS. LYNCH:  Tavistock.



**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1          MR. GOFF:  Give me one minute.

2          (Recess taken at 9:10 p.m. and

3   reconvened at 9:12 p.m.)

4          MS. LYNCH:  Tavistock.

5          MR. GOFF:  Tavistock is going to bid

6   no more.  We're done.

7          MS. LYNCH:  Okay.  So just to recoup.

8   Luby's' last bid was at 61 million cash.  The

9   option to take assignment of the Pepsi contract

10  or not.  And if they don't, they'll pay the

11  estate $2,450,000 for a total value of

12  $63,450,000.

13         Tavistock's last bid was at

14  59,060,000 cash with a total value of 61,550,000.

15         At this point, the debtors and the

16  committee are going to take a break.  We'd like

17  the bidders to stay.

18         (Recess taken at 9:14 p.m. and

19  reconvened at 9:21 p.m.)

20         MS. LYNCH:  The debtors and the

21  committee confirm that the highest and best offer

22  is the last offer from Luby's.  We're also

23  confirming that Tavistock's last offer is the

24  second highest offer, and that offer is

**W&F**

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com

1      irrevocable until the earlier of closing with

2      Luby's for 60 days.  And anything else?

3                  MR. STEVENSON:  That's it.

4                  MS. LYNCH:  Okay.  This concludes the

5      auction.

6                  (Auction concluded at 9:25 p.m.)

7                  --   --   --   --

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



State of Delaware )
                    )
New Castle County )

### CERTIFICATE OF REPORTER

I, Lucinda M. Reeder, Registered Diplomate Reporter, Certified Real-time Reporter and Notary Public, do hereby certify that the foregoing record is a true and accurate transcript of my stenographic notes taken on June 17, 2010 in the above-captioned matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 17th day of June 2010 at Wilmington, Delaware.



Lucinda M. Reeder, RDR, CRR

ORIGINAL

**W&F**

**WILCOX & FETZER LTD**
Registered Professional Reporters
(302) 655-0477
www.wilfet.com